[No. S085224. Jan. 28, 2002.]

DELANEY GERAL MARKS, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Michael Lawrence, Gary Sowards and Mary Jane Mona for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Thomas A. Brady, Laurence K. Sullivan and Sharon Wooden, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**BROWN, J.**—Appeal from a judgment of death is automatic. (Pen. Code, § 1239, subd. (b).) If, as in most cases, the defendant is indigent, this court will appoint counsel to prosecute the appeal. (*Id.*, § 1240.1.) Until 1998, appointed counsel's obligations also included "a duty to investigate factual and legal grounds for the filing of a petition for writ of habeas corpus." (Cal. Supreme Ct., Policies Regarding Cases Arising from Judgments of Death, policy 3, former std. 1-1; see *In re Sanders* (1999) 21 Cal.4th 697, 717-718 [87 Cal.Rptr.2d 899, 981 P.2d 1038]; see also *In re Anderson* (1968) 69 Cal.2d 613 [73 Cal.Rptr. 21, 447 P.2d 117].) Since 1998, the court's policies have alternatively provided for the appointment of separate counsel to represent death penalty defendants on direct appeal and in habeas corpus/ executive clemency proceedings. We issued an order to show cause in this matter to clarify the authority of habeas corpus counsel to participate in the correction, augmentation, and settlement of the record on appeal. Having assessed considerations of both policy and practicality, we conclude that, should the timing of the appointment permit, habeas corpus counsel may submit to appellate counsel suggestions for correction, augmentation, and settlement. Appellate counsel, however, retains ultimate and plenary control of the record correction process[1] on the defendant's behalf, bearing in mind the obligation to "consult with and work cooperatively with habeas corpus counsel." (Cal. Supreme Ct., Policies Regarding Cases Arising from Judgments of Death, policy 3, std. 1-1 (Supreme Court Policies).)

---

[1]In general, references to "record correction" and "record correction process" throughout this opinion will include correction and augmentation of the record and settlement of the statement on appeal.

Accordingly, respondent court did not abuse its discretion in declining to permit petitioner's habeas corpus counsel to participate in record correction. We further conclude, however, that the procedures utilized for settling the statement on appeal substantially failed to conform to rules 7 and 36(b) of the California Rules of Court.[2] In the interests of judicial economy since the matter is currently before us, we will exercise our inherent authority to direct resettlement in conformance with the prescribed procedure. (Cf. *People v. Wright* (1990) 52 Cal.3d 367, 401, fn. 6 [276 Cal.Rptr. 731, 802 P.2d 221].)

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Delaney Geral Marks was sentenced to death on June 3, 1994. On September 22, 1998, this court appointed Richard Power (Power; appellate counsel) to represent him on direct appeal. On March 18, 1999, the court appointed the Habeas Corpus Resource Center (HCRC; habeas corpus counsel) to represent him in habeas corpus and executive clemency proceedings.

On June 3, 1999, Power filed "Appellant's Request for Correction of Record, Augmentation of Record, Viewing and Distribution of Sealed Record, Preparation of Settled Statement" (Appellant's Request for Correction). Thereafter, the HCRC electronically transmitted to Power four documents containing suggested additional record corrections for his review. These documents also identified several apparently unreported proceedings and unreported comments by defendant in open court. Power had no objection to the additional requests, which did not duplicate any he had already submitted; but he did not formally incorporate any of the HCRC's documents in his previously filed request.

At a record correction hearing held July 23, 1999, before respondent superior court (Judge Jeffrey W. Horner), both appellate and habeas corpus counsel appeared as did Albert Thews, who had represented petitioner at trial, and Judge Kenneth Burr, who had been the deputy district attorney. Also present was Assistant District Attorney James Anderson, who had been the prosecutor during a Penal Code section 1368 competency hearing. Neither Deputy Public Defender Susan Sawyer, who had represented petitioner at that hearing, nor Judge Michael Ballachey, who had presided, was present.

Neither the court nor any other participant objected to the HCRC's presence, and habeas corpus counsel actively participated. Power apprised respondent of the HCRC's suggestions for correction and augmentation of the record and distributed printed copies of the HCRC's documents to the

---

[2]Hereafter, all references to rule or rules are to the California Rules of Court.

court clerk and the district attorney. The HCRC explained these documents were drafts for appellate counsel's review and requested permission to file a finalized pleading as an addendum to Appellant's Request for Correction, a request Power seconded. The HCRC subsequently filed its documents as "Addendum to Appellant's Request for Correction of Record, Augmentation of Record, Viewing and Distribution of Sealed Record, Preparation of Settled Statement Filed June 3, 1999" (Addendum).

In the course of the hearing, numerous gaps in the recorded proceedings appeared, which would require contacting several other parties, including those involved in petitioner's competency hearing, to determine appropriate settlement. The HCRC expressed a willingness to assist in this effort. While respondent did not expressly authorize the HCRC's involvement in this regard, neither did it reject the offer. Respondent continued the hearing to November 12, 1999.

In the meantime, the HCRC continued to review additional portions of the record, including four boxes of juror questionnaires, to determine whether additional correction or augmentation was needed.[3] Based on this review, the HCRC sent to appellate counsel on November 1, 1999, a draft of further record correction requests for his consideration and comment. Although he had no objection to any of the requests, Power declined to amend his original motion because in his view these requests were not relevant to petitioner's appeal. Instead, he suggested the HCRC file a motion directly with respondent court, which the HCRC did on November 9, 1999, as "Defendant's Supplemental Request for Correction of Record, Augmentation of Record, Viewing and Distribution of Sealed Record, Preparation of Settled Statement" (Supplemental Request).

At the November 12 hearing, appellate counsel and the HCRC again appeared on behalf of petitioner.[4] When the hearing commenced and without prior notice, Anderson stated that on behalf of both the Attorney General and the district attorney he objected to further participation by the HCRC in the

---

[3]Power had previously indicated he did not need to have the juror questionnaires provided to him.

[4]Shortly prior to the hearing, habeas corpus counsel observed Anderson enter the courtroom from Judge Horner's chambers. In support of the brief in opposition, the Attorney General has submitted a declaration by Anderson acknowledging he had an in camera ex parte discussion with Judge Horner prior to the November 12 hearing, but denying the discussion concerned any matter relating to the hearing except that Anderson would be representing the Attorney General's Office as well as the district attorney. Petitioner has submitted no evidence to the contrary.

record correction process. Respondent then ruled the HCRC lacked "standing" to appear or submit pleadings or other documents on behalf of petitioner in the current proceedings.[5] Respondent based this ruling, at least in part, on its belief that the Addendum had substantially duplicated Appellant's Request for Correction, resulting in considerable extra effort in reviewing the requests. It was later discovered that the court had inadvertently compared the draft and finalized versions of the same HCRC documents, copies of the former having been provided to the court clerk by Power on July 23, 1999. The court further determined petitioner's Supplemental Request was untimely and declined to file it on that basis rather than lack of standing.

Following its rulings, respondent distributed the "Court's Settled Statement Re: Suggested Corrections to Reporter's Transcript/Unreported Chambers Discussions—Guilt and Penalty Trials in Department 13 Before Judge Horner" (Court's Settled Statement) and ordered that it be the final settled statement for all settlement requests relating to those phases of petitioner's trial.

A third record correction hearing was held December 10, 1999, at which time the HCRC submitted a "Motion To Reconsider the Court's Ruling of November 12, 1999" (Motion to Reconsider) seeking reconsideration of (1) the ruling on "standing," (2) the preparation and filing of the Court's Settled Statement as contrary to the rules, and (3) the refusal to file petitioner's Supplemental Request. Anderson reiterated opposition to the HCRC's participation in record correction. Power took no position other than to defer to the HCRC. Respondent denied the Motion to Reconsider in its entirety.

The court then indicated it was prepared to settle those portions of the record regarding the competency hearing referenced in the Addendum. In addition to Anderson, Sawyer was present, but Judge Ballachey was not. Based on counsel's recollections or lack thereof, respondent settled the statement and then certified the record on appeal.

Petitioner now seeks review of the denial of his Motion to Reconsider.

---

[5]The court also ruled HCRC could no longer independently view or copy court files or exhibits; appellate counsel must accompany anyone conducting such review. Apparently, the Alameda County Superior Court does not generally restrict access to superior court files; the only restriction is that an exhibit technician must accompany anyone viewing exhibits. Accordingly, the Attorney General "agrees that habeas counsel should be allowed [whatever] access [is] afforded under the county's procedures . . . ."

DISCUSSION

I.

At the second record correction hearing, both respondent court and appellate counsel noted that recent changes in this court's procedures for appointment of counsel following a judgment of death had given rise to some procedural uncertainty in the correction process. As respondent expressed the point, "cooperation between [habeas corpus and appellate counsel] doesn't necessarily mean that everyone gets to file a separate brief, everyone gets to file a separate request. . . . The fact that I was responding to a multiplicity of moving papers, requests, certification notices resulted in multiplying my time by a factor far greater than two, and that is something that I know that the Supreme Court and the Judicial Council are all very concerned with, the expenditure of the Court's time."

For some perspective on the issue, a brief overview of the historical context is helpful.

Prior to 1998, all death penalty appointments were dual, i.e., were for both the direct appeal and habeas corpus/executive clemency proceedings. (See generally Supreme Ct. Policies, policy 3, former std. 1-1, as adopted June 6, 1989; Cal. Supreme Ct., former Guidelines for Fixed Fee Appointments, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings in the California Supreme Court, as amended Feb. 4, 1998; Cal. Supreme Ct., former Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants in the California Supreme Court, as amended Feb. 4, 1998.)[6] With respect to the appeal, counsel's responsibilities included record review and correction. (See Cal. Supreme Ct., Guidelines for Fixed Fee Appointments, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings in the California Supreme Court, guideline 5 (Fixed Fee Guidelines); Cal. Supreme Ct., Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants in the California Supreme Court, guideline II.I (Payment Guidelines).) Policy 3 further provided that "[a]ppellate counsel . . . shall have a duty to investigate factual and legal grounds for filing of a petition for writ of habeas corpus. The duty to investigate is limited to investigating potentially meritorious grounds for relief that have come to counsel's attention in the course of preparing the appeal." (Supreme Ct. Policies, policy 3, former std. 1-1, as adopted June 6, 1989.)

---

[6]This case does not raise any question governed by a previous version of the applicable statutes, court rules, or Supreme Court Policies and Fixed Fee and Payment Guidelines. Therefore, unless otherwise indicated, all subsequent references are to the current provisions.

Beginning in 1998, this court modified its policies and the guidelines for payment of counsel in response to certain state and federal statutory changes intended to expedite review in death penalty cases. (*In re Robbins* (1998) 18 Cal.4th 770, 792, fn. 13 [77 Cal.Rptr.2d 153, 959 P.2d 311]; see, e.g., Gov. Code, former § 68650 et seq., added by Stats. 1997, ch. 869, § 3, and renumbered § 68660 et seq. by Stats. 1998, ch. 485, § 95; Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132 (Apr. 24, 1996) 110 Stat. 1214; see also 28 U.S.C. § 2254.) The Supreme Court Policies, Fixed Fee Guidelines, and Payment Guidelines now provide for the option of appointing separate counsel to represent death penalty defendants on direct appeal and in habeas corpus/clemency proceedings. In such case, "appointment of habeas corpus counsel for a person under a sentence of death shall be made simultaneously with appointment of appellate counsel or at the earliest practicable time thereafter." (Supreme Ct. Policies, policy 3, std. 2-1.)

With respect to the appointment of habeas corpus counsel, the Legislature has established the HCRC, which is authorized "[t]o employ up to 30 attorneys who may be appointed by the Supreme Court to represent any person convicted and sentenced to death in this state . . . for the purpose of instituting and prosecuting postconviction actions in the state and federal courts, challenging the legality of the judgment or sentence imposed against that person, and preparing petitions for executive clemency. Any such appointment may be concurrent with the appointment of the State Public Defender or other counsel for purposes of direct appeal under Section 11 of Article VI of the California Constitution." (Gov. Code, § 68661, subd. (a).)

In the case of bifurcated appointments, the Supreme Court Policies impose on appellate counsel the duty to "take and maintain detailed, understandable and computerized transcript notes and . . . compile and maintain a detailed list of potentially meritorious habeas corpus issues that have come to appellate counsel's attention" in the course of preparing the appeal. (Supreme Ct. Policies, policy 3, std. 1-1.) Until the appointment of habeas corpus counsel, he or she also has the duty to "preserve evidence that comes to the attention of appellate counsel if that evidence appears relevant to a potential habeas corpus investigation." (*Ibid.*) Upon appointment of habeas corpus counsel, "appellate counsel shall deliver . . . copies of the list of potentially meritorious habeas corpus issues, copies of the transcript notes, and any preserved evidence relevant to a potential habeas corpus investigation, and thereafter shall update the issues list and transcript notes as warranted." (*Ibid.*)

Separate habeas corpus counsel "shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. The

duty to investigate is limited to investigating potentially meritorious grounds for relief that come to counsel's attention in the course of reviewing appellate counsel's list of potentially meritorious habeas corpus issues, the transcript notes prepared by appellate counsel, the appellate record, trial counsel's existing case files, and the appellate briefs, and in the course of making reasonable efforts to discuss the case with the defendant, trial counsel and appellate counsel." (Supreme Ct. Policies, policy 3, std. 1-1.) As noted in *In re Robbins, supra,* 18 Cal.4th at page 792, footnote 13, this language "merely clarifies the previously imposed duty, and accounts for the involvement, under the recent legislation, of separate direct appeal and habeas corpus counsel. The amendment effects no substantive change in the scope of counsel's duty to conduct a habeas corpus investigation." In this regard, the Supreme Court Policies anticipate that appellate counsel "shall consult with and work cooperatively with habeas corpus counsel to facilitate timely investigation, and timely preparation and filing (if warranted) of a habeas corpus petition by habeas corpus counsel." (Supreme Ct. Policies, policy 3, std. 1-1.)

II.

A.

Having described the legal and historical background against which this case arises, we turn to the threshold issue of respondent's ruling that the HCRC did not have standing to participate in the record correction process.

█ The legal concept of standing arises in a variety of contexts. (See, e.g., *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 17-19 [108 P.2d 906, 135 A.L.R. 318] [distinguishing between lack of capacity to sue and lack of right to sue corporation by legatee, rather than personal representative, of deceased shareholder]; *Rakas v. Illinois* (1978) 439 U.S. 128, 139 [99 S.Ct. 421, 428, 58 L.Ed.2d 387] [defendant's challenge to unlawful search or seizure depends upon whether he "is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties"].) In whatever context, however, it generally does not concern the authority of an attorney to appear in court in a representative capacity. (Cf. *People ex rel. Tyler v. Pratt* (1866) 30 Cal. 223.) Clearly, petitioner as a party to the appeal had standing to participate in record correction proceedings. Equally clearly, Power, as appellate counsel, had authority to and did appear on his behalf. (See rules 35(c), 36(b); Supreme Ct. Policies, policy 3, std. 2-1; Fixed Fee Guidelines, guideline 5; see also Pen. Code, § 190.8, subd. (g); rule 39.55(b).) █ The only question is whether the HCRC, as habeas corpus counsel, could separately appear and participate.

Characterizing the HCRC as "cocounsel," petitioner argues habeas corpus counsel has essentially the same authority to appear as appellate counsel, albeit for a different purpose. If not inaccurate, this description is at least inexact, since habeas corpus counsel and appellate counsel are appointed independently to discharge distinct and essentially unrelated functions on behalf of a death penalty defendant. (See Supreme Ct. Policies, policy 3, std. 2-1; Fixed Fee Guidelines, guideline 5; Payment Guidelines, guideline II.I; see also Pen. Code, § 1473.) Petitioner also characterizes respondent's action as "curtailing petitioner's right to habeas corpus counsel" and in effect removing his attorney. This begs the question, however, since the scope of habeas corpus counsel's authority to participate in record correction is the very issue now before this court, and in any event petitioner was not without representation by the attorney principally charged with these responsibilities. (Cf. *Cannon v. Commission on Judicial Qualifications* (1975) 14 Cal.3d 678, 697 [122 Cal.Rptr. 778, 537 P.2d 898] [trial court's action improper in abruptly removing deputy public defenders and replacing them with unprepared substitute counsel in ongoing proceedings].)

We conclude the scope of authority to participate should reflect the purpose and attendant duties of the separate appointments. This court's policies and guidelines, as well as the court rules and statutes, both explicitly and implicitly contemplate appellate counsel will assume primary, if not exclusive, control of record correction on behalf of a death penalty defendant. Accordingly, habeas corpus counsel should have no direct or active role in that process.

As relevant here, Supreme Court Policies, policy 3, standard 2-1, states, "This court's appointment of appellate counsel for a person under a sentence of death is for the following: (i) pleadings and proceedings related to preparation and certification of the appellate record; (ii) representation in the direct appeal before the California Supreme Court . . . ." (See Fixed Fee Guidelines, guideline 5 [progress payment made following submission of "a draft first request for correction of the record (and, if appropriate, any motion for augmentation and/or settled statement)"; additional payment due "after certification of the record"]; see also Payment Guidelines, guideline II.I.) No comparable duty devolves to habeas corpus counsel, nor does habeas corpus counsel receive payment for completing these tasks. (See Supreme Ct. Policies, policy 3, std. 2-1; Fixed Fee Guidelines, guideline 5; Payment Guidelines, guideline II.I.)

By contrast, "[t]he appointment of habeas corpus counsel is for the following: (i) investigation, and preparation and filing (if warranted), of a habeas corpus petition in the California Supreme Court, including any

informal briefing and evidentiary hearing ordered by the court and any petition to exhaust state remedies . . . ." (Supreme Ct. Policies, policy 3, std. 2-1; see Fixed Fee Guidelines, guideline 5; Payment Guidelines, guideline II.I.) To that end, "[h]abeas corpus counsel should expeditiously investigate potentially meritorious bases for filing a petition for a writ of habeas corpus. If the timing of separate appointments permits, this investigation should be done concurrently with appellate counsel's review of the appellate record and briefing on appeal . . . ." (Supreme Ct. Policies, policy 3, std. 2-2.) Thus, notwithstanding that potentially meritorious claims may appear in the record on appeal (see *In re Robbins, supra,* 18 Cal.4th at p. 793, fn. 15), the terms of the policies do not contemplate habeas corpus counsel's participation in the correction process.

Neither does any statutory authority or the rules. Penal Code section 190.6, subdivision (a) articulates the Legislature's finding "that the sentence in all capital cases should be imposed expeditiously." Section 190.8 of the Penal Code sets forth the procedure and timing for prompt certification of the record on appeal for completeness and accuracy; rules 39.50 through 39.57 implement its directives. Although these provisions apply only to cases in which trial commenced after January 1, 1997 (rule 39.53(b)), they inform our determination of the question presented.

Pursuant to Penal Code section 190.8, subdivision (b), the clerk and court reporter are to begin preparation of the trial transcripts within 30 days of the imposition of death. Certification occurs "in two stages, the first for completeness and the second for accuracy . . . ." (*Id.,* subd. (a).) Under rule 39.54, the transcripts are delivered to defense counsel and the prosecuting attorney, who must submit declarations either stating that they have determined the transcripts are complete or requesting the inclusion of additional materials or the correction of errors. (Rule 39.54(c).) The trial court may not certify the record as complete except upon the submission of such declarations. (Rule 39.54(e); see also Pen. Code, § 190.8, subd. (e).)

Rule 39.55 governs certification of the record for accuracy. (See also Pen. Code, § 190.8, subd. (g).) Following delivery of the record, "[a]ppellate counsel shall file any request for corrections or additional transcripts" within a specified time. (Rule 39.55(b).) This rule applies to both defense counsel and the prosecutor. (See Pen. Code, § 190.8, subd. (i).) The trial court then holds a hearing "to address the completeness and accuracy of the record, in accordance with the procedures and timeliness set out in rule 39.54(d)" (rule 39.55(c)); orders any necessary corrections or additions; and certifies the record as accurate (rule 39.55(d)).

Although rule 35 governs petitioner's case (see rule 39.53(b)) and its procedures differ somewhat in detail and time limits from rules 39.50

through 39.57, for present purposes it describes essentially the same process for correction and augmentation of the record. Rule 35(c)(3) provides that upon completion of the clerk's and reporter's transcripts, "a copy shall be delivered to counsel on appeal . . . ." Thereafter, "any party may serve and file a request for correction of these transcripts . . . . The trial judge shall determine whether the requested corrections shall be made . . . . After corrections have been made, the judge shall certify that all objections have been determined, and that the transcripts have been corrected in accordance with such determination, and shall redeliver the transcripts to the clerk." (Rule 35(c)(4).)

None of the foregoing assigns any role to habeas corpus counsel in record correction. Nevertheless, the question remains whether this court should, in the exercise of its inherent authority in these matters, authorize habeas corpus counsel's involvement and, if so, under what circumstances and to what extent.

Petitioner asserts the "HCRC's participation in the record correction phase of this case is directly and intrinsically related to the ultimate preparation of habeas corpus claims." We reject this argument for several reasons.

First, petitioner submits no particulars in which the record as certified may be deficient for the purpose of preparing habeas corpus claims on his behalf. As discussed more fully below, the appellate record does not provide the basis for raising such claims but only for developing them based on matters outside the record. Petitioner identifies no potential claim that the HCRC's exclusion from record correction will prevent him from adequately developing.

Second, to the extent the argument implies habeas corpus claims derive principally from the record on appeal, it conflicts with the rule that collateral review by habeas corpus is not a reiteration of or substitute for an appeal. (See *In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001] [court will not consider merits of claim previously raised and rejected on appeal]; *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] [court will not consider claims that could have been but were not raised on appeal].) Thus, while the appellate record may be a starting point for developing habeas corpus claims, it is not the primary basis for asserting them. (*In re Robbins, supra,* 18 Cal.4th at p. 793, fn. 15 ["duty to investigate . . . *may* arise based on triggering facts that appear on the face of the record"]; see Supreme Ct. Policies, policy 3, std. 1-1.) As we have stated, "a duty to investigate . . . also may arise based upon triggering facts that appear nowhere on the face of the record"; and this court has expressly declined to

limit the availability of habeas corpus investigation funds "to 'claims that are discoverable by reference to the four corners of the appellate record' or claims that are 'revealed by the record.' [Citation.]" (*In re Robbins, supra,* 18 Cal.4th at p. 793, fn. 15.)

Third, we have no reason to anticipate the record correction performed by appellate counsel will be inadequate for purposes of discovering or substantiating habeas corpus claims. The Supreme Court Policies provide that "[a]ppellate counsel shall consult with and work cooperatively with habeas corpus counsel to facilitate timely investigation, and timely preparation and filing (if warranted) of a habeas corpus petition." (Supreme Ct. Policies, policy 3, std. 1-1.) As it relates to record correction, this directive contemplates appellate counsel's consideration of any timely suggestions habeas corpus counsel may offer for correction, augmentation, or settlement of the record, particularly as they relate to potential habeas corpus claims.

In addition, recent statutory changes should minimize the need for any but minor record correction. Penal Code section 190.9, subdivision (a)(1), requires, "In any case in which a death sentence may be imposed, all proceedings conducted in the municipal and superior courts, including all conferences and proceedings, whether in open court, in conference in the courtroom, or in chambers, shall be conducted on the record with a court reporter present. The court reporter shall prepare and certify a daily transcript of all proceedings commencing with the preliminary hearing. Proceedings prior to the preliminary hearing shall be reported [and transcribed when the municipal or superior court receives notice that the death penalty is being sought]." (See rule 39.52.) Moreover, "[d]uring the course of the trial in which the death penalty is being sought, trial counsel shall alert the court's attention to any errors in the transcripts incidentally discovered by counsel while reviewing them in the ordinary course of trial preparation. The court shall periodically request that trial counsel provide a list of errors in the trial transcript during the course of trial and may hold hearings in connection therewith." (Pen. Code, § 190.8, subd. (c).)

With respect to proceedings in the municipal court, rule 39.52(g) requires trial counsel to "(1) review the docket sheets to ensure that transcripts of all proceedings have been made; [¶] (2) examine the municipal court file to determine whether it is complete; [¶] (3) review the reporter's transcript; and [¶] (4) consult with opposing counsel to determine whether all other discussions have been properly transcribed." (See also rule 39.52(h) [declaration that counsel has performed tasks required by rule 39.52(g)].) As to superior court proceedings, trial counsel is required to review the record for completeness (rule 39.54(b)) and, if necessary, file "a request for any additional

materials to be included in the record and any corrections of errors that have come to the attorney's attention." (Rule 39.54(c)(2).)

Pursuant to Penal Code section 190.7, subdivision (a)(1), the record on appeal in a capital case consists of not only all the reporter's transcripts but a clerk's transcript as well. (See rule 39.51(a).) "The clerk's transcript shall include all documents filed or lodged in the municipal and superior court files in the case, including all items listed in rule 33(a) and juror questionnaires of all potential jurors, regardless of whether the jurors were selected to sit on the case." (Rule 39.51(a)(1).) The statute also requires the inclusion of "[a] copy of any other paper or record on file or lodged with the superior or municipal court and a transcript of any other oral proceeding reported in the superior or municipal court pertaining to the trial of the cause." (Pen. Code, § 190.7, subd. (a)(1).) Additionally, "[a]ll documents filed confidentially under Penal Code section 987.9 or 987.3 shall be sealed and copies provided only to the reviewing court and to counsel for the defendant to whom the documents relate. All transcripts of in camera proceedings shall be sealed and copies provided only to the reviewing court and to counsel for those parties present at the proceedings." (Rule 39.51(b).)

Scrupulous attention to these preparation and review procedures by both the trial court and counsel will substantially reduce the need for correction and augmentation or settled statements to ensure a complete and accurate record on appeal. Moreover, these dictates make clear, and we emphasize, neither the trial court nor counsel may decline to include any portion of the proceedings in the record on appeal.

Finally, according habeas corpus counsel an independent or active co-counsel role in record correction proceedings raises the potential for serious logistical complications and delays in certification, contrary to legislative intent that the record correction process proceed expeditiously. (See Pen. Code, § 190.8; rule 39.50 et seq.; see also Pen. Code, § 190.6.) Because, as here, appointment of separate appellate and habeas corpus counsel may not occur simultaneously, habeas corpus counsel's requests for correction, augmentation, or settlement may fall well outside the time frame imposed by statute and rules (see, e.g., rule 39.55) even if submitted as soon as reasonably possible after review of the record.[7]

Petitioner also contends he is disadvantaged by the appointment of separate counsel when a dual appointment would allow his habeas corpus

---

[7]To date, this court has simultaneously appointed appellate and habeas corpus counsel in only three cases, and the delay in appointment of habeas corpus counsel has varied from a few months to more than a year.

counsel to act on his behalf during record correction. He offers no basis, however, for assuming separate appellate counsel will not proceed with adequate record correction. (See *ante*, at pp. 188-190.) Petitioner further suggests an element of judicial economy supports counsel's early involvement: "If habeas corpus counsel must wait for record correction to end for the opportunity to correct deficiencies in the record, these remedies will be limited to making requests to this Court, rather than to the trial court, or raising the matter as a potential habeas corpus claim." The function of the record, however, is principally to facilitate meaningful appellate review. Moreover, if habeas corpus counsel are in a position to seek relief in this court allowing for correction of the record (cf. rule 12(b)) or if the matter can be raised on habeas corpus, then petitioner is not without a remedy.

We do not intend the foregoing discussion to be read as foreclosing habeas corpus counsel from having input in record correction, only as subordinating any role to that of appellate counsel. This secondary role accommodates both the assignment of responsibility for record correction to appellate counsel and the duty imposed by the Supreme Court Policies that habeas corpus counsel's investigation of potentially meritorious claims, including review of the appellate record and briefing on appeal, "should be done . . . , in any event, in cooperation with appellate counsel." (Supreme Ct. Policies, policy 3, std. 2-2.)

Habeas corpus counsel may therefore proffer suggestions for correction, augmentation, or settlement of the record for appellate counsel's consideration, but with the latter making the ultimate determination whether to include any or all in the defendant's formal request to the trial court. At the same time, we reiterate that appellate counsel has no authority to limit the record on appeal to less than the "entire record" designated by statute and the rules. (Pen. Code, § 190.7; rule 39.51.) Furthermore, submission of habeas corpus counsel's suggestions cannot delay or interfere with the timely processing of the record. The statutes and rules impose definite outside time limits on the correction process. Appellate counsel and the trial court must work expeditiously to meet them. (See Pen. Code, §§ 190.6, 190.8, subds. (b), (d), (g); rules 39.50(b), 39.52(g)-(i), (*l*), 39.54; see also rule 35(a)-(c).) Coordinating belated requests would put an undue burden on both. For the same reasons, habeas corpus counsel also may not challenge during the correction process appellate counsel's decision not to adopt any or all suggestions.

Our discussion nevertheless should not be read to prevent appellate counsel from designating habeas corpus counsel as the defendant's representative in record correction if circumstances warrant. In that event, however, the

appearance would not be by habeas corpus counsel *qua* habeas corpus counsel but as appellate counsel's designee.

Accordingly, we conclude respondent did not abuse its discretion in precluding the HCRC from participating in record correction or in denying petitioner's Motion to Reconsider. (See also *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 147-148 [74 Cal.Rptr. 285, 449 P.2d 221] ["every court of record has powers requisite to its proper functioning as an independent constitutional department of government"].)

■ As to petitioner's Supplemental Request, the court based its ruling on timeliness grounds, not standing; and it appears the court did not abuse its discretion in that regard either. Requests for correction and augmentation must be filed no later than "90 days after the date the record was delivered to appellate counsel . . . ." (Rule 35(c)(4); see rule 39.55(b) [same].) Accordingly, we decline to remand the matter for Power to consider whether to request any additional record correction based on that document, particularly in light of the fact he has filed the appellant's opening brief without requesting further augmentation, correction, or settlement.

### B.

Petitioner's Motion to Reconsider also raised a claim concerning settlement of the record, asserting the procedures adopted by respondent court failed to conform to the rules.

The record on appeal in a capital case "includes, but is not limited to, the following: [¶] (1) The normal and additional record prescribed in the rules adopted by the Judicial Council pertaining to an appeal taken by the defendant from a judgment of conviction. [¶] (2) A copy of any other paper or record on file or lodged with the superior or municipal court and a transcript of any other oral proceeding reported in the superior or municipal court pertaining to the trial of the cause." (Pen. Code, § 190.7, subd. (a)(1), (2).) "In any case in which a death sentence may be imposed, all proceedings conducted in the municipal and superior courts, including all conferences and proceedings, whether in open court, in conference in the courtroom, or in chambers, shall be conducted on the record with a court reporter present." (*Id.*, § 190.9, subd. (a)(1).)

Nevertheless, as here, gaps in the record may occur, in which case the rules provide a procedure for filling them in.

In criminal cases, the process is governed by rules 7 and 36(b). (See also rule 39.50(a) [rules governing criminal appeals apply to appeals from death penalty judgments].) That process may be divided into nine steps:

First, the appellant shall "serve and file an application for permission to prepare a settled statement," which "shall be verified and shall contain a statement of the facts or a certificate of the clerk showing that a reporter's transcript cannot be obtained." (Rule 36(b); see also rule 4(e).)

Second, the judge "shall decide the application . . . , and, if the showing is sufficient, shall make an order permitting the preparation of a settled statement" of the oral proceedings in question. (Rule 36(b).)

Third, upon such an order, the appellant must "serve and file a condensed statement [thereof] in narrative form . . . ." (Rule 7(b); see rule 36(b).) While it is unclear precisely what this contemplates, the rule does provide that "[i]f necessary for accuracy, clarity, or convenience, portions of the evidence may be set forth by question and answer, subject to the approval of the court in settling the statement." (Rule 7(b).) We may thus infer that verbatim statements would be the exception. (See, e.g., *Sweet v. Markwart* (1953) 115 Cal.App.2d 735, 743 [252 P.2d 751] [finding the appellant's "chronological recitation of occurrences during the trial" and " 'Partial Transcript by Question and Answer' " "not a proper way to prepare a narrative statement"]; cf. *People v. Tuilaepa* (1992) 4 Cal.4th 569, 585 [15 Cal.Rptr.2d 382, 842 P.2d 1142] ["The settlement, augmentation, and correction process does not allow parties to create proceedings, make records, or litigate issues which they neglected to pursue earlier"].)

Fourth, the respondent may "serve and file proposed amendments" to the proposed settled statement. (Rule 7(b).)

Fifth, the superior court's clerk "shall set a time . . . for settlement of the statement" and "give . . . notice to all parties of the time set . . . ." (Rule 7(d).)

Sixth, at this hearing "the judge who tried the case" "shall settle the statement and fix the time within which the appellant shall engross it as settled." (Rule 7(d).)

Seventh, "the appellant shall engross the statement in accordance with the order of the judge," and "serve and file the engrossed statement." (Rule 7(d).)

Eighth, if the respondent thereafter serves and files timely objections, the judge must determine whether the statement was prepared in accordance with the order; if not, changes are required. (Rule 7(d).)

Finally, once the statement is determined to conform to the order, the judge then certifies it. (Rule 7(d).)

In sum, these rules contemplate that the appellant will review the record for any apparent omissions in the recording of the proceedings and seek the court's permission to include a settled statement of those proceedings. Counsel must verify the application for permission and either explain its factual basis or include the clerk's certification that the proceedings were not recorded. If the court grants permission to proceed by settled statement, the appellant files a narrative description without unnecessary detail of the subject proceedings. Once the appellant has drafted and served the narrative statement, the respondent may propose any amendments. At a subsequent hearing after notice to the parties, the trial judge who presided resolves the differences and directs the appellant to engross the statement, i.e., to incorporate any changes from the original submission. Absent any objection by the respondent, the judge then certifies the statement as settled.

 For various reasons, the settled statements in this case failed to conform to the foregoing procedures.

As previously noted, Judge Horner presided at the guilt and penalty phases of the trial, petitioner was represented by Attorneys Thews and Weis (now deceased), and the prosecutor was Deputy District Attorney (now Judge) Burr. At the Penal Code section 1368 competency hearing, Judge Ballachey presided, Deputy Public Defender Sawyer appeared on behalf of petitioner, and the prosecution was represented by Assistant District Attorney Anderson.

Both Appellant's Request for Correction and the HCRC's Addendum identified apparently unrecorded portions of the trial and competency hearing. However, neither document nor any subsequent filing contained an application with verification or court clerk certification as required by rule 36(b); nor did either set forth "a condensed statement in narrative form of . . . the oral proceedings . . . ." (Rule 7(b).) Instead of directing compliance with rule 7 at the July 23, 1999, hearing, respondent (Judge Horner) indicated—as to the trial proceedings—"I'll need to review this with both Mr. Thews and Judge Burr," neither of whom was present at that point. Later, the court elaborated, "And I indicated that I would pursue this matter by reading the appropriate pages in the transcript, and I would discuss the matter with Judge Burr, who was then the trial deputy district attorney, and Mr. Thews, after I've had the opportunity to make those references and would be prepared to—presumably to address this subject at our next meeting." It then designated September 17, 1999, as the date for these trial counsel to be present to review the transcript and provide input. The record is silent as to whether this meeting occurred as scheduled. (Cf. rule 7(d).) It is clear, however, that respondent did not direct petitioner, as appellant, to

engross any statement as settled; nor did it certify such a statement. (See rule 7(d).) Rather, it ordered the filing of the Court's Settled Statement and stated, "This is my settled statement. This is not proposed. I'm not negotiating this. This is my settled statement."

■ In deciding whether to remand the matter for compliance with rule 7, we note that the scant decisional authority construing settlement procedures suggests courts generally will not elevate form over substance if the statement as settled fully and accurately reflects the omitted oral proceedings. "The rules confer full power over such a record in the trial judge. As long as the trial judge does not act in an arbitrary fashion he has full and complete power over such a record." (*St. George v. Superior Court* (1949) 93 Cal.App.2d 815, 817 [209 P.2d 823]; cf. *Sweet v. Markwart, supra,* 115 Cal.App.2d at p. 743 ["While appellant here ought to have obeyed these rules, nevertheless, if his statement as proposed actually contained those portions of the oral proceedings which he deemed material to the determination of his points on appeal, the court could not strike it out, but must proceed to settle it"]; *Williams v. Goldberg* (1944) 66 Cal.App.2d 40, 45-46 [151 P.2d 853] [although procedure adopted by the trial court "was not in accord with the procedure provided by the Rules on Appeal," the record was clear as to what statement the court intended to settle].)

Nevertheless, "under the rules it is the duty of the trial court to settle a proposed statement, not to make one." (*Stevens v. Superior Court* (1958) 160 Cal.App.2d 264, 269 [325 P.2d 204].) ■ Here, the procedures completely short-circuited the established format and effectively eliminated the role of the parties in the process.

Substantial departures from established procedures marked settlement of the statement with respect to the Penal Code section 1368 proceedings as well. Respondent court solicited input regarding unrecorded discussions from Assistant District Attorney Anderson at the July 23 hearing but noted, "Obviously, Miss Sawyer is not here, Judge Ballachey is not here, and I wasn't present, so I would suggest that perhaps if appellate counsel wants to inquire of Miss Sawyer, for example, to see if her recollection differs [from Anderson's] or if she has any additional recollection. If not, at our next hearing I'd be prepared to settle that as a statement of what just was discussed at the bench, but I want to give you the opportunity to check with the other parties if you wish to do that." Habeas corpus counsel also volunteered to "assist Mr. Power in picking the brains of the individuals who participated in any unreported proceedings and draft up a proposed settled statement."

Despite the opportunity, no such draft document was submitted. At the November 12, 1999, hearing, Anderson placed on the record his best recollection as to the substance of unreported proceedings during the competency

hearing. Deputy Public Defender Sawyer appeared at the December 17, 1999, hearing. In general, she either deferred to or confirmed Anderson's rendition or gave her own similar version of what had transpired. In the latter circumstance, respondent indicated without objection from appellate counsel, "What I will propose here and invite comment is to accept both Mr. Anderson's statement and Ms. Sawyer's statement, and together they will be the settled statement of what occurred on that occasion. In other words, I'm not believing—I'm not disbelieving either attorney. I'm accepting both their statements, and that will be what the Appellate Court will review." As to those proceedings Anderson could not recall, Sawyer was generally able to provide her own recollection. In one instance, however, neither could remember; and respondent stated, "Then the 'no recollection' by both parties, that will constitute the settled statement with respect to that particular entry." Apparently neither appellate nor habeas corpus counsel contacted or sought input from Judge Ballachey; respondent certified the statement for the competency hearing without doing so as well.

In terms of prescribed procedure, the foregoing initially runs afoul of the provision that "the judge who tried the case" settles the statement. (Rule 7(d); cf. rule 51 [providing for substitution of another judge when "any act is required [by the rules] to be done by the judge who tried the case, and such judge is unavailable or unable to act at the time fixed therefor"].) A primary reason for this requirement lies in the concern for resolving conflicts between the appellant and respondent as to the proper contents of the statement. (See rule 7(b).) "Once settlement is ordered, the court has broad discretion to accept or reject counsel's representations in accordance with its assessment of their credibility. [Citations.] However, it cannot refuse to make that assessment. It may decline to settle a statement only if, after resort to all available aids, including the judge's own memory and those of the participants, it is affirmatively convinced of its inability to do so. [Citation.]" (*People v. Gzikowski* (1982) 32 Cal.3d 580, 585, fn. 2 [186 Cal.Rptr. 339, 651 P.2d 1145]; see *Burns v. Brown* (1946) 27 Cal.2d 631, 636 [166 P.2d 1] [trial judge's "familiarity with the trial and knowledge of what took place there make him uniquely qualified to determine what the evidence was and whether it has been correctly stated"]; *Sidebotham v. Superior Court* (1958) 161 Cal.App.2d 624, 628 [326 P.2d 890].)

Settlement of the competency hearing statement also failed to comply with the requirement for verification or certification and for a condensed narrative by the appellant and proposed amendments by the respondent. The court did not direct preparation of an engrossed settled statement; the People had no opportunity to register any objections; and no such statement was certified as accurate.

Strict compliance with rule 7 assumes particular significance in capital cases by avoiding questions as to the sufficiency of the appellate record (see, e.g., *People v. Hawthorne* (1992) 4 Cal.4th 43, 63 [14 Cal.Rptr.2d 133, 841 P.2d 118]; cf. *Gardner v. Florida* (1977) 430 U.S. 349, 360-361 [97 S.Ct. 1197, 1205-1206, 51 L.Ed.2d 393]) and obviating delays if insufficiencies arise after briefing. (See, e.g., *People v. Wright, supra,* 52 Cal.3d at p. 401, fn. 6.) Collaterally, proper settlement of the record also preserves a death penalty defendant's interests with respect to the investigation of potentially meritorious habeas corpus claims. (See Supreme Ct. Policies, policy 3, std. 1-1; see also *In re Clark* (1993) 5 Cal.4th 750, 783-784 [21 Cal.Rptr.2d 509, 855 P.2d 729].) Although we have concluded respondent court did not abuse its discretion in excluding the HCRC from participating in record correction and thus deny petitioner relief on that basis, we nevertheless retain inherent authority to direct the trial court to conduct proceedings necessary to supplement gaps in the record. (See, e.g., *People v. Hawthorne, supra,* at pp. 62-63; *People v. Wright, supra,* at p. 401, fn. 6; cf. rule 12(b), (c) [authorizing the reviewing court to direct correction and augmentation on its own motion].) Given the substantial deviations from the required procedures in settling the statement on appeal for both the guilt and penalty phase trials and the competency hearing and in the interests of judicial economy, we deem it prudent to remand the matter for proper settlement in compliance with the applicable rules.

## DISPOSITION

The order to show cause is discharged. The matter is remanded to the superior court for further proceedings not inconsistent with this opinion, including resettlement of the statements on appeal relating to the guilt and penalty trials and the Penal Code section 1368 hearing. (See also *ante,* fn. 5.)

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

Petitioner's petition for a rehearing was denied March 27, 2002. Chin, J., did not participate therein.