[No. S127602. June 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JAY SHAWN JOHNSON, Defendant and Appellant.

Counsel

Stephen B. Bedrick, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CHIN, J.**—Both the United States and the California Constitutions prohibit the exercise of peremptory challenges solely because of group bias. (*Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].) In this case, defendant objected at trial that the prosecutor had challenged three African-American prospective jurors on the basis of their race. The trial court found that defendant had not established a prima facie case of group bias and overruled the objection. Following his conviction of second degree murder and assault resulting in the death of a child under the age of eight, defendant argued on appeal that the court erred in not finding a prima facie case of group bias. The Court of Appeal agreed and reversed the judgment. We granted review.

On review, we held that, in order to establish a prima facie case of group bias, "the objector must show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias." (*People v. Johnson* (2003) 30 Cal.4th 1302, 1306 [1 Cal.Rptr.3d 1, 71 P.3d 270].) Applying this standard, "we uph[e]ld the trial court's finding that defendant failed to establish a prima facie case that the prosecutor used his peremptory challenges improperly." (*Ibid.*) We also held that "*Batson* does not require state reviewing courts to engage in comparative juror analysis for the first time on appeal." (*Ibid.*) We remanded the matter to the Court of Appeal for further proceedings. This time, the Court of Appeal affirmed the judgment, and we denied review.

■ The United States Supreme Court granted certiorari limited to the question regarding the applicable test to establish a prima facie case, and reversed. (*Johnson v. California* (2005) 545 U.S. 162 [162 L.Ed.2d 129, 125 S.Ct. 2410].) It held that "California's 'more likely than not' standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case." (*Id.* at p. 168 [125 S.Ct. at p. 2416].) Instead, the court held, "a defendant satisfies the requirements of *Batson*'s first step by producing

evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." (*Id.* at p. 170 [125 S.Ct. at p. 2417].) Applying this standard, the court concluded that the inferences in this case "that discrimination may have occurred were sufficient to establish a prima facie case under *Batson*." (*Id.* at p. 173 [125 S.Ct. at p. 2419].) It remanded the matter to this court "for further proceedings not inconsistent with this opinion." (*Ibid.*)

■ We must now decide what those further proceedings should be. To decide this question, some background discussion is necessary. In its opinion in this case, the high court explained the three-step procedure that applies when a defendant objects at trial that the prosecution exercised its peremptory challenges discriminatorily. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citation.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' [Citation.]" (*Johnson v. California, supra*, 545 U.S. at p. 168 [125 S.Ct. at p. 2416], fn. omitted.) Here, because the trial court found that defendant had not made out a prima facie case, it did not move on to steps two and three. We now know that the trial court erred in this respect.

Defendant argues that we must reverse the judgment outright and order a new jury trial. The Attorney General argues that we should remand the matter for the trial court to conduct steps two and three and determine whether discrimination did, in fact, occur. The federal courts generally remand for further hearings in this situation. In *Batson* itself, the high court remanded the matter and instructed, "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." (*Batson, supra*, 476 U.S. at p. 100; see also *Miller-El v. Dretke* (2005) 545 U.S. 231 [162 L.Ed.2d 196, 125 S.Ct. 2317], [reviewing a case in which the state appellate court had "remanded the matter to the trial court to determine whether Miller-El could show that prosecutors in his case peremptorily struck prospective black jurors because of race"].) The Ninth Circuit Court of Appeals has also remanded for further proceedings. (E.g., *Williams v. Runnels* (9th Cir. 2006) 432 F.3d 1102, 1110 & fn. 14; *Paulino v. Castro* (9th Cir. 2004) 371 F.3d 1083, 1093; *Fernandez v. Roe* (9th Cir. 2002) 286 F.3d 1073, 1080.)

Defendant relies primarily on California, not federal, law in arguing for an outright reversal and new trial. In past cases, including one post-*Batson* case,

this court has refused to order a limited remand. "The People suggest . . . that we merely order a 'limited remand' to permit the prosecutor to explain his reasons for excluding the prospective jurors in question. We observe that, although our court has rejected such a procedure in prior cases (see *People v. Hall* [(1985)] 35 Cal.3d 161, 170–171 [197 Cal.Rptr. 71, 672 P.2d 854] [trial held more than three years before reversal of judgment]; *People v. Allen* (1979) 23 Cal.3d 286, 295, fn. 4 [152 Cal.Rptr. 454, 590 P.2d 30] [trial held nearly three years before reversal of judgment]), the United States Supreme Court in the subsequently decided case of *Batson v. Kentucky, supra,* 476 U.S. at page 100 [90 L.Ed.2d at p. 90, 106 S.Ct. at p. 1725], employed such a remand. (See also *United States v. Tindle* (4th Cir. 1986) 808 F.2d 319 [remand after more than three years].) [¶] In *Batson,* the case had been tried only two years prior to reversal of the judgment. In the present case, voir dire examination commenced in November 1981, approximately six years ago. As in *Hall,* we believe it would be 'unrealistic to believe that the prosecutor could now recall in greater detail his reasons for the exercise of the peremptory challenges in issue, or that the trial judge could assess those reasons, as required, which would demand that he recall the circumstances of the case, and the manner in which the prosecutor examined the venire and exercised his other challenges.' (35 Cal.3d at p. 171.)" (*People v. Snow* (1987) 44 Cal.3d 216, 226–227 [242 Cal.Rptr. 477, 746 P.2d 452].)

■ Defendant argues that principles of stare decisis require us to adhere to our previous decisions rather than follow the federal remand procedure. However, developments since our most recent refusal to order a limited remand (*People v. Snow, supra,* 44 Cal.3d 216), including especially the high court decision in this case, convince us that we should now adopt the federal approach. We should at least attempt to have the trial court resolve the matter on remand. The error in *Snow* and cases it cited was one of state law. The error here was a federal constitutional violation. The remand procedure seems to work reasonably well in federal court. Moreover, the consequences of refusing to remand are different now than they were in *Snow.* The high court has now informed us that the California standard for a prima facie showing was too high. This circumstance might cause more findings of error in cases tried before the high court opinion in this case than have occurred in the past. In this situation, we see no compelling reason to provide a more favorable remedy than the federal courts themselves provide. This is especially so given the fact that the trial court did not have the benefit of the United States Supreme Court's decision in this case. (See *Williams v. Runnels, supra,* 432 F.3d at p. 1110, fn. 14 [noting this circumstance in ordering a limited remand].) We have recognized that in some situations the limited remand "procedure is preferable to reversal of the judgment. (See [Pen. Code,] § 1260; *People v. Minor* (1980) 104 Cal.App.3d 194, 199–200 [163 Cal.Rptr.

501], and cases cited therein.)" (*People v. Hall, supra*, 35 Cal.3d at p. 170.) We think this is now one of those situations.

Defendant raises several objections to this conclusion. He argues that a limited remand "would look like an effort to avoid the United States Supreme Court's decisions in *Batson* and [this case]." We disagree. As we have explained, under *Batson*, when the defendant has stated a prima facie case of improper use of peremptory challenges, the trial court must move on to steps two and three. A limited remand would permit it to do so. The high court in this case held that defendant had established a prima facie case under *Batson* because there were "inferences that discrimination *may have occurred* . . . ." (*Johnson v. California, supra*, 545 U.S. at p. 173 [125 S.Ct. at p. 2419], italics added.) It did not hold that discrimination *did* occur. The court remanded the matter to this court for further proceedings not inconsistent with its opinion. (*Ibid.*) Doing what the federal courts do—ordering further proceedings to determine whether discrimination did, in fact, occur—would be consistent, not inconsistent, with that opinion.

Defendant argues that a limited remand is not practical for several reasons. He points out that the prospective jurors themselves have been dismissed, and therefore cannot be examined further. This would generally be the case with a limited remand. The federal courts have apparently not found this to be a problem. Peremptory challenges are normally held *after* the jurors have been fully questioned. This circumstance presents no reason to refuse a limited remand.

Defendant also argues that too much time has elapsed since the jury selection, which concluded in December 1998, between seven and eight years ago. He contends that memories have faded during that time, and it would be too difficult for the trial court to attempt to undertake steps two and three at this late date. This circumstance is, indeed, a concern, as we have explained in our previous cases refusing to order a limited remand. But a comparable amount of time has elapsed in some of the cases that the federal courts have remanded for a hearing. (E.g., *Williams v. Runnels, supra*, 432 F.3d 1102 [trial held in March 1998; remand ordered in January 2006]; *Paulino v. Castro, supra*, 371 F.3d 1083 [remand ordered five years after the state appellate court decision and a longer time after trial]; *Fernandez v. Roe, supra*, 286 F.3d 1073 [remand ordered about seven years after trial].) Indeed, in the most recent of these cases, the court ordered a remand "even though the state represented to the district court that the prosecutor no longer remembers why he utilized his peremptory challenges and could not locate the jury selection notes." (*Williams v. Runnels, supra*, at p. 1110, fn. 14.) In recent years, we have asked trial courts to undertake possibly even more difficult tasks. In *Marks v. Superior Court* (2002) 27 Cal.4th 176 [115 Cal.Rptr.2d 674, 38 P.3d

512], for example, we remanded a capital case to the trial court over seven years after trial to settle the appellate record in various ways. If, as is the case, federal courts routinely hold a hearing under these circumstances to attempt to determine whether there was a federal constitutional violation, we see no reason for California courts not even to try to make this determination.

In this case, the court and parties have the jury questionnaires and a verbatim transcript of the jury selection proceeding to help refresh their recollection. The prosecutor may have notes he took during the jury selection process. Defendant argues that the record itself has "effectively poisoned the well," making a fair hearing on remand impossible. Both the trial court and the appellate courts have drawn inferences from the trial record regarding possible reasons for the prosecutor's exercise of the peremptory challenges. (See *People v. Johnson, supra,* 30 Cal.4th at pp. 1325–1326 [discussing grounds suggested in the trial record for the prosecutor to have reasonably exercised his peremptory challenges].) This circumstance does not make it impossible for the court on remand to judge the sincerity of any explanation the prosecutor may now make for his challenges and the overall propriety of those challenges. We are confident that the trial court can and will provide defendant a fair hearing on remand.

Defendant also points out that because the trial judge is now an appellate court justice, the matter on remand may have to be heard by a different judge. This circumstance does not make a limited remand impossible. Every time a hearing is held in federal district court on habeas corpus review of a state case the hearing will be before someone other than the state trial court judge. The judge on remand will have the trial record, including the jury questionnaires, to assist in conducting the second and third *Batson* steps. In *Fernandez v. Roe, supra,* 286 F.3d at page 1080, for example, the court remanded the matter "to the district court to conduct an evidentiary hearing, including review of the jury questionnaires, to determine whether there was a *Batson* violation in the trial court." Again, we see no reason not to do what the federal courts do to attempt to determine whether there was, in fact, a *Batson* violation.

Defendant argues that the prosecutor waived his right to state his reasons for exercising the peremptory challenges by failing to do so at trial. He notes that after the trial court found defendant had not established a prima facie case, it gave the prosecutor the opportunity "to make a further record." The prosecutor declined to do so. We attach no legal significance to this circumstance. After the trial court found no prima facie case, the prosecutor was not required to state his reasons for his peremptory challenges. That he did not do so at that time should not deprive him of the opportunity to do so on remand now that we know the trial court erred in failing to find a prima facie case.

Defendant argues that even in federal court, the remand procedure has not always resulted in a valid determination. He cites two appeals in the same case: *U.S. v. Alcantar* (9th Cir. 1987) 832 F.2d 1175 (*Alcantar I*); *U.S. v. Alcantar* (9th Cir. 1990) 897 F.2d 436 (*Alcantar II*). In *Alcantar I*, the court found the district court had erred in not permitting defense counsel to attempt to rebut the prosecutor's statement of reasons for the peremptory challenges. It remanded the matter for the district court to conduct a new hearing. (*Alcantar I*, *supra*, at p. 1180.) On remand, the district court found no improper exercise of peremptory challenges and reaffirmed the conviction. (*Alcantar II*, *supra*, at p. 438.) This time, after reviewing the proceedings on remand, the appellate court again reversed and ordered a new trial. For reasons specific to the case, it found the hearing on remand "inadequate to test the genuineness of any of the prosecutor's proffered justifications for his peremptory strikes." (*Id.* at p. 440.) Defendant also asks us to judicially notice court documents in one of the cases in which the Ninth Circuit ordered a remand. (*Fernandez v. Roe*, *supra*, 286 F.3d 1073.) We grant the request. (Evid. Code, § 452, subd. (d).) The documents show that, on remand, the district court could not make the required determination due to lack of memory and other reasons. Accordingly, it granted relief on habeas corpus and ordered a new trial.

The results in these cases do not aid defendant. The *Alcantar* experience merely illustrates that the trial court's reinstatement of the judgment on remand is subject to further appellate review, and that a second reversal may be appropriate in a given case. The experience on remand in *Fernandez v. Roe*, *supra*, 286 F.3d 1073, merely shows the obvious—that at the hearing on remand, it may turn out that the court cannot make a reliable determination. The high court has explained that when, as here, the defendant has made out a prima facie case, the burden shifts to the state to adequately explain the challenges. (*Johnson v. California*, *supra*, 545 U.S. at p. 168 [125 S.Ct. at p. 2416].) If the prosecutor cannot carry this burden to the trial court's satisfaction, then a retrial will be necessary. In this case, for example, it is certainly possible that due to the passage of time or other reasons, the trial court will find that it cannot reliably determine whether the prosecutor exercised his peremptory challenges in a permissible manner. If that occurs, the court should order a new trial. (See *People v. McGee* (2002) 104 Cal.App.4th 559, 573–574 [128 Cal.Rptr.2d 309].) But this circumstance does not prevent us from remanding the matter for a hearing, just as it did not prevent the courts in *Alcantar I*, *supra*, 832 F.2d 1175, and *Fernandez v. Roe*, *supra*, 286 F.3d 1073, from doing so.

For these reasons, we remand the matter to the Court of Appeal with directions in turn to remand the matter to the trial court. That court should attempt to conduct the second and third *Batson* steps. It should require the prosecutor to explain his challenges. If the prosecutor offers a race-neutral

explanation, the court must try to evaluate that explanation and decide whether defendant has proved purposeful racial discrimination. If the court finds that, due to the passage of time or any other reason, it cannot adequately address the issues at this stage or make a reliable determination, or if it determines that the prosecutor exercised his peremptory challenges improperly, it should set the case for a new trial. If it finds the prosecutor exercised his peremptory challenges in a permissible fashion, it should reinstate the judgment.

George, C. J., Baxter, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J., Concurring.**—In *People v. Johnson* (2003) 30 Cal.4th 1302 [1 Cal.Rptr.3d 1, 71 P.3d 270], a majority of this court held that to make a prima facie showing that a prosecutor was unconstitutionally using peremptory challenges for a discriminatory purpose, a defendant must show "that it is more likely than not [that the prosecutor's] peremptory challenges, if unexplained, were based on impermissible group bias." (*Id.* at p. 1306.) I dissented, joined by Justice Werdegar, pointing out that the majority's holding was inconsistent with the views of federal courts and the courts of other states, most of which permitted the defendant to establish a prima facie case by raising a reasonable inference of discrimination. (*Id.* at p. 1335 (dis. opn. of Kennard, J.); see *id.* at pp. 1328–1329 (dis. opn. of Werdegar, J.).) The United States Supreme Court granted certiorari and held that a defendant need only produce evidence sufficient to permit the trial judge to draw an inference of group bias, rather than prove discrimination was more likely than not. (*Johnson v. California* (2005) 545 U.S. 162 [162 L.Ed.2d 129, 125 S.Ct. 2410, 2416–2417].)

The high court returned the case to this court for further proceedings. The question now is whether to order a limited remand to permit the trial court to determine whether the prosecutor's challenges were based on group bias, or to remand for a new trial with a new jury. I agree with the majority that we should follow the federal courts' limited remand practice. (See maj. opn., *ante*, at p. 1100.) Although past opinions of this court have asserted that such a remand is unrealistic when, as here, over six years have elapsed since the jury was selected (*People v. Snow* (1987) 44 Cal.3d 216 [242 Cal.Rptr. 477, 746 P.2d 452]; see *People v. Hall* (1983) 35 Cal.3d 161, 170–171 [197 Cal.Rptr. 71, 672 P.2d 854] [three years]), the feasibility of determining whether the prosecution's peremptory challenges were based on impermissible group bias is a matter best left to the trial court after a remand of the case to that court.

**WERDEGAR, J.,** Concurring.—I concur in the majority's decision to remand this case for further proceedings. I do so with the understanding that the error in this case was a federal, not a state, constitutional error (see maj. opn., *ante*, at p. 1100). As the majority explains, the high court in *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712], having found a violation of the federal equal protection clause, ordered that case remanded for a new hearing. The lower federal courts, following *Batson*, have similarly ordered remand as a remedy for *Batson* violations.[1] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], however, has a different origin. As we explained in that pre-*Batson* case, "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." (*Wheeler*, at pp. 276–277.) Because *Wheeler* was based on state law, nothing we decide today implicates the rule of automatic reversal this court has applied for state constitutional *Wheeler* error.[2] Although some appellate courts have employed remand as a remedy for *Wheeler* error,[3] we leave the correctness of those decisions for another day.

In addition, I write separately to underscore the majority's holding that the trial court, on remand, retains the discretion to decide that an accurate reconstruction of the voir dire is impossible due to the passage of time, requiring that the conviction be reversed. We addressed the effect of the delay inherent in the remand remedy in *People v. Snow, supra,* 44 Cal.3d 216, where the voir dire proceeding had occurred six years earlier. Although our holding in *Snow* that the *Wheeler* error was reversible is inapplicable to this *Batson* violation case, our observations concerning the six-year delay in that case remain pertinent. We concluded in *Snow* that "it would be 'unrealistic to believe that the prosecutor could now recall in greater detail his reasons for the exercise of the peremptory challenges in issue, or that the trial judge could assess those reasons, as required, which would demand that he recall the circumstances of the case, and the manner in which the prosecutor

---

[1] See, e.g., *Paulino v. Castro* (9th Cir. 2004) 371 F.3d 1083; *Fernandez v. Roe* (9th Cir. 2002) 286 F.3d 1073.

[2] *People v. Wheeler, supra,* 22 Cal.3d at page 283 (*Wheeler* error "prejudicial per se"); *People v. Allen* (1979) 23 Cal.3d 286, 295, footnote 6 [152 Cal.Rptr. 454, 590 P.2d 30] (same); *People v. Hall* (1983) 35 Cal.3d 161, 170–171 [197 Cal.Rptr. 71, 672 P.2d 854] (same); *People v. Snow* (1987) 44 Cal.3d 216, 226–227 [242 Cal.Rptr. 477, 746 P.2d 452] ("reversible per se"); *People v. Fuentes* (1991) 54 Cal.3d 707, 721 [286 Cal.Rptr. 792, 818 P.2d 75] (reversal "compelled").

[3] See, e.g., *People v. McGee* (2002) 104 Cal.App.4th 559, 571–572 [128 Cal.Rptr.2d 309], disapproved on another ground in *People v. Avila* (2006) 38 Cal.4th 491, 550 [43 Cal.Rptr.3d 1, 133 P.3d 1076]; *People v. Williams* (2000) 78 Cal.App.4th 1118, 1130 [93 Cal.Rptr.2d 356]; *People v. Garcia* (2000) 77 Cal.App.4th 1269, 1282 [92 Cal.Rptr.2d 339]; *People v. Rodriguez* (1999) 76 Cal.App.4th 1093, 1104–1110 [91 Cal.Rptr.2d 308]; *People v. Rodriguez* (1996) 50 Cal.App.4th 1013, 1023–1025 [58 Cal.Rptr.2d 108]; *People v. Gore* (1993) 18 Cal.App.4th 692, 706 [22 Cal.Rptr.2d 435].

examined the venire and exercised his other challenges.' " (*Snow*, at p. 227, quoting *People v. Hall, supra,* 35 Cal.3d at p. 171 [lapse of more than three years].) As the majority notes, the voir dire proceedings in this case took place between seven and eight years ago. (Maj. opn., *ante,* at p. 1101.) On remand, the trial court may well decide that neither it nor the parties can reliably reconstruct events from so long ago, notwithstanding the existence of the jury questionnaires and verbatim transcript of the jury selection proceeding. (See *People v. Garcia, supra,* 77 Cal.App.4th at p. 1282 ["While we have every confidence in the good faith and professionalism of the parties, we have less confidence in their memories"].)

With these reservations, I concur.