[No. E042607. Fourth Dist., Div. Two. Apr. 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JAY ANGELO KELLY, Defendant and Appellant.

## COUNSEL

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ P. J.**—In our opinion upon remand in *People v. Kelly* (Sept. 29, 2006, E036170) [nonpub. opn.] *(Kelly I)*, we conditionally affirmed defendant's convictions for driving/taking a vehicle (Veh. Code, § 10851, subd. (a)), evading a police officer (Veh. Code, § 2800.2, subd. (a)) and misdemeanor hit and run (Veh. Code, § 20002, subd. (a)); the findings that he had suffered three priors for which he served prison terms (Pen. Code, § 667.5, subd. (b)) and three-strike priors (Pen. Code, § 667, subds. (b)–(i)); and his sentence of two consecutive terms of 25 years to life, plus three years. The condition was that the trial court, on remand, "allow the prosecutor to state her reasons for exercising the peremptory challenges of which [defendant] complained below. If she offers a race-neutral explanation, the [trial] court . . . must try to evaluate that explanation and determine 'whether [defendant] has proved purposeful racial discrimination. . . . If it finds this prosecutor exercised [her] peremptory challenges in a permissible fashion, it should re[in]state the judgment[]' [citation] . . . . If the trial court is unable to make this ruling, 'it should set the case for a new trial.' [Citation.]" *(Kelly I, supra,* E036170.) On January 9, 2007, the trial court conducted such a hearing, determined that the prosecutor's use of peremptories was proper and reinstated the judgment. Defendant here contends that the hearing was conducted in a manner that was so fundamentally unfair as to render it void. We reject his contentions and affirm the trial court's ruling.

The facts concerning defendant's crimes, which are recited in our prior opinion, are irrelevant to this appeal.

I.

ISSUES AND DISCUSSION

1. *Defendant's Representation at the January 9, 2007 Hearing*

A deputy public defender represented defendant at an October 12, 2006 appearance preceding this hearing and continued to represent him during five

more appearances until the January 9, 2007 hearing. At that hearing, defendant objected to being represented by the deputy public defender, and the trial court ordered an attorney from the conflict panel to then represent him. Other members of the conflict panel had authored defendant's July 25, 2003 and February 11, 2004 motions for a new trial,[1] both alleging *Wheeler*[2] error. The latter motion had gone to hearing and had been denied on April 30, 2004. Both the July 25, 2003 and February 11, 2004 new trial motions referenced the transcript of the jury voir dire. Therefore, that transcript existed from, at least, July 25, 2003, on. A copy of the transcript was given to defendant's deputy public defender on October 12, 2006.

Although, as defendant points out, the conflict panel attorney who represented him at the January 9, 2007 hearing had just been appointed to the case, *at defendant's insistence*, defendant had been represented by the deputy public defender from October 12, 2006, on, and that attorney had been in possession of a transcript of the voir dire from that date. On December 11, 2006, the deputy public defender stated that he was trying to get in touch with defendant's trial attorney, who had since retired, but he did not believe that attorney was going to respond to him. He also said he would do his best to contact "the attorneys,"[3] presumably meaning the attorneys who had authored defendant's new trial motions.

At the January 9, 2007 hearing, the trial court granted defendant's request to speak to his newly appointed conflicts panel attorney. Thereafter, defendant requested to be allowed to represent himself. However, he refused to sign that portion of the waiver of counsel that stated he could not appeal on the basis of incompetency of counsel and he withdrew his request. Defendant's conflict panel attorney sought a continuance on the basis that defendant's appellate attorney had advised defendant that he should tell his conflict panel attorney certain things. The trial court denied the continuance, saying, "[We are] here for one purpose. That one purpose is for the prosecutor to put on the record the reasons for the excusals of those three [potential] jurors."

The prosecutor, who had represented the People during the 2001 voir dire, then stated on the record her reasons for peremptorily dismissing the three potential jurors in question. Defendant's conflict panel attorney stated that defendant had concerns that the prosecutor had had time, in the six years that

---

[1] This was the third such motion defendant had made below, each authored by a different conflicts panel attorney.

[2] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

[3] This was all counsel for defendant said on the record. However, the minute order for that day states, "Counsel adv[ise]d [the attorney who authored the second motion for a new trial] needs to be present. [Counsel for defendant] will contact [her]." (Capitalization omitted.) However, counsel never said this.

elapsed between the voir dire and this hearing, to contrive nonracial reasons for excusing these potential jurors. Defendant's conflict panel attorney also disputed, on the basis of defendant's memory, some of the factual statements made by the prosecutor concerning the excused potential jurors. To counter the assertion that the prosecutor's reasons were contrived, the prosecutor stated that she had the page numbers from the transcript of the voir dire to support her explanations and she pointed out that they were identical to the reasons she had given in her response to defendant's February 2004 motion for a new trial; thus, defendant's assertion that her excuses were contrived over the years was unfounded. Defendant's conflict panel attorney stated that defendant said that she had not given the same reasons on both occasions. He added, "[Defendant's] requesting the record. Id [*sic*] the Court reviewed the record of jury selection and that it would impeach the People's statement as to the responses of the [potential jurors]."

The trial court, which had conducted the voir dire, recalled it and confirmed that the facts the prosecutor said had motivated her to excuse the potential jurors in question had, in fact, occurred. The trial court concluded that the prosecutor had exercised her peremptories in a permissible fashion.

Defendant contends that the January 9, 2007 hearing was fundamentally unfair because the conflicts panel attorney who represented him had just been appointed to do so and the latter lacked "firsthand information about the contested voir dire examination." First, the voir dire examination itself was not contested. What occurred there, presumably, was accurately reflected in the transcript, which defendant's attorneys had had access to since 2003. What was contested was whether the prosecutor's statement of the reasons she excused the potential jurors at issue was factually supported by that transcript and whether those reasons were, in fact, the reasons upon which she relied in excusing those potential jurors. Defendant's conflicts panel attorney raised both issues at the January 9, 2007 hearing. He never once asked the trial court for a few minutes in which to review the voir dire transcript to determine the veracity of the prosecutor's representations about its contents.[4] The trial court interrupted the proceedings on that date to give defendant and his conflict panel attorney an opportunity to converse. There

---

[4] In his briefs, defendant asserts, referencing pages 4 through 8 of the transcript of the January 9, 2007 hearing, that the transcript of the voir dire "was not used as requested by [defendant]" and "[was not] produced or used at the hearing . . . ." First, those pages of the transcript do not affirmatively demonstrate that the transcript was not used or produced. Clearly, the public defender, who had just been replaced by the conflict panel attorney, had had possession of that transcript since October 12, 2006. It is difficult, if not impossible, to believe that his copy of that transcript was not in defendant's file when he turned it over to the conflict panel attorney. Even if it had not been, it is completely impossible to believe that neither the trial court nor the prosecutor came to the hearing without their copies of the voir

is no reason to believe the court would not have given defendant's conflict panel attorney an opportunity to review the transcript.

Weeks before the hearing, defendant's deputy public defender had stated his doubts about whether trial counsel for defendant would respond to the former's request that he participate in this hearing. The fact that defendant's deputy public defender appeared at the hearing without defendant's trial attorney indicated that his prediction was correct. The appearance of the attorney who authored the second new trial motion, contrary to defendant's current claim, would have added nothing to this hearing that defendant's conflict panel attorney could not have supplied himself. She had not been present during voir dire. She had merely reviewed the voir dire transcript, years after the trial, and had written and argued the new trial motion, in part, contending that the trial court's denial of defendant's *Wheeler* motion was erroneous.

*Defendant points to nothing defense counsel could have done at the hearing that he did not do.* As such, his contention is without merit.

2. *Defendant's Asserted Other Indicia of the Unfairness of the January 9, 2007 Hearing*

Defendant here provides a laundry list of other reasons why the January 9, 2007 hearing was unfair. First, he asserts that the prosecutor's explanations for excusing the potential jurors at issue were not given under oath. He cites no authority requiring this, and in all the years we have reviewed *Wheeler/Batson*[5] hearings, we have never seen a trial court require a prosecutor to state his or her explanations under oath.

Next, he asserts that no "notes" were used and none were obtained by defendant's conflict panel attorney. Although in his opening brief, defendant does not specify to what notes he is referring, he states in his reply brief that

dire transcript. If defendant's conflict panel attorney had wanted to refer to it, and did not have defendant's copy of it, he could have asked to borrow the prosecutor's or the trial court's and we have no doubt his request would have been accommodated.

Defendant makes the same unfounded assertion about the prosecutor's notes for the first time in his reply brief. The record does not expressly state whether the prosecutor had her notes with her at the January 9, 2007 hearing. However, it does contain the following statement by defendant's conflict panel attorney: "Based upon the period of time of six years, the People's time to make notes and . . . [defendant's] concern [about] the facts put into the record at the time, there is no possible way to assure the integrity of notes. And those were the reasons at the time—a strong suspicion . . . on his behalf of those notes being contrived and made up . . . ." This seems to suggest that the prosecutor did, indeed, use notes during the January 9, 2007 hearing.

[5] *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712].

they are the notes the prosecutor took during voir dire. He suggests that the presence of such notes are vital to a fair hearing, citing *People v. Johnson* (2006) 38 Cal.4th 1096 [45 Cal.Rptr.3d 1, 136 P.3d 804] (*Johnson*) and *People v. Hutchins* (2007) 147 Cal.App.4th 992, 999–1000 [55 Cal.Rptr.3d 105] (*Hutchins*). He misreads both cases.

In *Johnson*, the defendant asserted that a rehearing of his *Wheeler/Batson* motion upon remand from the California Supreme Court could not be fair because so much time had passed that the trial court and attorneys would not be able to remember what occurred during voir dire. In response to the defendant's fears, the California Supreme Court observed, "In this case, the court and parties have the jury questionnaires and a verbatim transcript of the jury selection proceeding to help refresh their recollection. *The prosecutor may have notes he took during the jury selection process.*" (*Johnson, supra,* 38 Cal.4th at p. 1102, italics added.) This is a far cry from a requirement that the prosecutor's notes be made available to the defense, if that is what defendant is presently suggesting.

■ In *Hutchins*, the appellate court reiterated *Johnson*'s holding that remand for a rehearing of an improperly decided *Wheeler/Batson* motion is appropriate where the trial court and the parties can correctly remember what occurred during voir dire. (*Hutchins, supra,* 147 Cal.App.4th at pp. 998–999.) It observed that, in the case before it, voir dire had occurred just a little over a year previously, there were detailed trial transcripts available, both sides had written motions on the matter, and the prosecutor had taken notes during voir dire. (*Ibid.*) As in *Johnson*, the prosecutor's notes were not essential to the fairness of the hearing—that the prosecutor, and, ultimately, the trial court, correctly recalled what occurred during voir dire was. If defendant here is suggesting that he cannot have had a fair hearing unless the prosecutor examined her notes, we observe the following: (1) the record does not indicate that the prosecutor did not, at some point in preparation for or during the January 9, 2007 hearing, examine them, and, in fact, it suggests just the opposite;[6] (2) these notes are not, in themselves, the sine qua non to a fair hearing, but are mere aids to enable the prosecutor to correctly recall what occurred during voir dire; and (3) the record before us does not suggest that the prosecutor needed any aids beyond the ones she used, which probably included her notes and definitely included her response to defendant's February 2004 new trial motion.[7]

---

[6] See footnote 4, *ante,* page 801.

[7] Defendant attempts to cloak in mystery the reference the prosecutor made to this document during the January 9, 2007 hearing. The record is clear that she was referring to her response to defendant's February 2004 motion for a new trial in which he made his second challenge to the validity of the verdicts based on the denial of his *Wheeler/Batson* motion.

Next, defendant states that the transcript of the voir dire was not "used," we presume by defendant's conflict panel attorney. We refer defendant to footnote 4 of this opinion on this matter. Moreover, defendant fails to assert how the failure to "use" the transcript, if it occurred, prejudiced him. As we have already pointed out, defendant's conflict panel attorney asserted that the explanations offered by the prosecutor for the excusal of the potential jurors at issue were not supported by the record, and, based upon its recollection, the trial court disagreed. We believe that, in making this assertion, defendant's conflict panel attorney covered the matter adequately.

Next, defendant asserts that he was denied a fair hearing because his attorney did not cross-examine the prosecutor. He provides no authority that cross-examination of the prosecutor is a prerequisite to either a fair original *Wheeler/Batson* hearing, or one upon remand. In all the years *Wheeler/Batson* has been on the books, we have never reviewed a case in which a prosecutor has been cross-examined by a defense attorney during either such hearing. Moreover, since defendant's conflict panel attorney asserted both that the record did not support the prosecutor's stated reasons for excusing these potential jurors and that they were not the true reasons why she exercised her peremptories, we see nothing that could have been gained by defense counsel cross-examining her, and defendant certainly does not disclose to us what this could have been.

Finally, defendant asserts that the absence of his trial counsel[8] and the attorneys who prepared the new trial motions deprived him of a fair hearing. First, as already stated, defendant's deputy public defender unsuccessfully attempted to get his trial attorney to attend the hearing. More importantly, defendant fails to assert that trial counsel would have performed a significant function at the hearing that his conflict panel attorney did not.[9] The presence of the attorney who filed the February 2004 motion for a new trial, which contested the denial of defendant's *Wheeler/Batson* motion, as we have already observed, would have been of no added value to the hearing because

---

[8] While he was represented by the conflict panel attorney, defendant told the court, "There is something . . . I would like done before we have this hearing." When the trial court asked him what that was, he replied, "A witness for one, [my trial attorney]." The trial court told defendant that the hearing was not for the purpose of having witnesses testify, but to have the prosecutor state her reasons for excusing the potential jurors at issue.

[9] Defendant attempts to demonstrate that the trial court was confused about, and therefore misremembered, facts concerning the potential jurors. He asserts that "the [trial] court . . . mistakenly characterized Juror Number 21 as a 'he' rather than a 'she' . . . and opined that the court remembered the 'hostility and the attitude' of prospective Juror Number '2' who was not even subject to the challenge." However, it is defendant who is confused. In its ruling at the conclusion of the January 9, 2007 hearing, the trial court referred to Prospective Juror No. 21 as a "he." The record of the voir dire demonstrates that this is correct. The other male potential juror to whom the trial court referred was No. 2, which is also correct, according to the voir dire transcript.

there is nothing she could have done that defendant's then attorney could not or did not do. Because she had not been present at voir dire, and had filed the new trial motion years after the verdicts had been rendered, she was essentially in the same position as defendant's conflict panel attorney. In other words, there was nothing that she knew that defendant's conflict panel attorney either did not know or could not easily know from reviewing documents that were easily within his reach.

### 3. *The Trial Court's Ruling Is Supported by the Evidence at the January 9, 2007 Hearing*

Defendant contends that he is entitled to a new rehearing because the prosecutor did not offer explanations for challenging one of the three potential jurors at issue. He incorrectly reads the record in this regard. Although the prosecutor, in stating her reasons, misidentified the number of one of the three, it is clear to whom she is referring[10] and it is even clearer that she offered explanations for the excusal of *three different* people.[11] The trial court, in making its ruling, referred to this potential juror by his proper number.

[10] First, she referred to him as No. 5. Then she correctly said that No. 5 was the first potential juror about whom she spoke, who was female. Subsequently, she may have identified him as No. 7. In response to the prosecutor's remarks, defense counsel correctly identified this potential juror as No. 2. As stated in the body of this opinion, in ruling that the prosecutor's reasons were valid, the trial court also correctly referred to this potential juror as No. 2.

The prosecutor asserted, in addition to her other objections to this potential juror, that she believed that he "could not make logical conclusions based on circumstantial evidence. And I did not feel he'd be a person that would work with the other 11 jurors. [¶] . . . [¶] [And, i]t appeared he did not understand the concept of burden of proof and circumstantial evidence." The prosecutor's written response to defendant's February 2004 new trial motion quotes defense counsel during the original *Wheeler/Batson* hearing as saying, " '[T]he [prosecutor] was going to say there was a reason to kick . . . Mr. Alexander [the potential juror concerned in this issue] . . . off, it was because he was going to say that she had to prove the case against the defendant and that sounds like a real tough burden she has to meet here.' [Citation.] What th[is p]rospective [j]uror also stated was that he 'don't jump to conclusions.' "

In his opening brief, defendant contends that this reason is not supported by the record. However, the trial court did not rely on it during the January 9, 2007 hearing to determine that the prosecutor's reason for excusing this potential juror was both supported by the record and genuine. Instead, the trial court recalled this potential juror's hostility and attitude, which, the trial court concluded, "would make any attorney . . . uncomfortable . . . ."

To the extent defendant suggests that *Snyder v. Louisiana* (2008) 552 U.S. ___ [170 L.Ed.2d 175, 128 S.Ct. 1203] (*Snyder*) requires a contrary conclusion, it does not. The United States Supreme Court in *Snyder* called the justifications given by the prosecutor there "unconvincing," "highly speculative," "suspicious," "implausib[le]" and "pretextual," which created an inference of discriminatory intent. (*Id.* at pp. ___–___ [170 L.Ed.2d at pp. 181–185].) The trial court here made no such finding and there is no basis in the record for one.

[11] When the trial court was explaining to defendant the reason for the January 9, 2007 hearing, it said, "It's . . . here for me to hear the reasons for the excusals of those two [potential jurors]," which the prosecutor corrected, saying, "Three."

4. *Application of* Snyder

At oral argument, defendant called our attention to the recent decision of the United States Supreme Court in *Snyder*, arguing that it implies support for all the procedural deficits he claims existed at this hearing. It does not.

    a. *The Facts of* Snyder

The prosecutor peremptorily excused an African-American potential juror because the juror was very nervous and expressed concern that he would miss days of student teaching if he served on the jury. (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 182].) The prosecutor said that, as a consequence of the potential juror's stated concern, the prosecutor feared the former would return a verdict of guilt of a lesser included offense to the first degree murder charged so as to avoid the penalty phase of the trial. (*Ibid.*) The opinion does not specifically state what amount of time the prosecutor had predicted during voir dire the guilt and penalty phases would consume. However, it does state that his predictions were accurate and the guilt phase took less than two days and the penalty phase less than one, with the entire trial ending on the Friday of the week the voir dire occurred. (*Id.* at p. ___ [170 L.Ed.2d at p. 184].) When the potential juror had said that he was unsure if he could make up in student teaching the day he lost during voir dire, the trial court had his dean called. (*Id.* at p. ___ [170 L.Ed.2d at p. 183].) The dean said as long as the potential juror's service did not go past that week, it would not cause a problem. (*Ibid.*) After that, the prospective juror did not again express a reluctance to serve. (*Ibid.*) Despite this, he was peremptorily excused the following day. (*Ibid.*)

    b. *The Holding of* Snyder

The United States Supreme Court disregarded the prosecutor's explanation that the potential jury was "very nervous" because the trial court never specifically ruled on whether it was genuine. (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 181].) As a consequence, the high court was unable to conclude that the trial court actually relied on the explanation and that its reliance was sound. (*Id.* at p. ___ [170 L.Ed.2d at p. 185].) Additionally, the Supreme Court concluded that the record did not show that the prosecutor would have peremptorily excused the potential juror solely on this basis. (*Ibid.*)

The high court called the prosecutor's other explanation "unconvincing," "highly speculative," "suspicious," "implausib[le]," and, ultimately, "pretextual." (*Snyder, supra*, 552 U.S. at pp. ___–___ [170 L.Ed.2d at pp. 181–185].) The Supreme Court reasoned that the prosecutor's fear that the potential juror would convict the defendant of a lesser included offense to obviate the need

for a penalty phase would have occurred only if all or most of the jurors wanted to convict the defendant of such an offense. (*Id.* at p. ___ [170 L.Ed.2d at p. 184].) If, on the other hand, most were leaning toward a first degree murder verdict, the prospective juror could have "hurried things along" simply by agreeing to convict the defendant of that crime, which, of course, the prosecutor would have favored. (*Id.* at p. ___ [170 L.Ed.2d at p. 184].) However, the high court categorized as "more telling" the fact that the trial had concluded, as predicted by the prosecutor during voir dire, within the time the potential juror's dean said would not cause a problem for potential juror's student teaching. (*Ibid.*) The Supreme Court further noted that the trial occurred early in the school semester, leaving the potential juror plenty of time within which to make up the classes he would have missed had he served on the jury. (*Ibid.*) Added to this was the fact that the potential juror, himself, seemed unconcerned, after he heard his dean's assurance, with the interruption the trial presented to his student teaching. (*Ibid.*) Finally, the high court observed that there were two others who were White and eventually served on the jury, one of whom had conflicts similar to the potential juror's and the other of whom had obligations far more numerous and pressing than those of the potential juror. (*Ibid.*) The prosecutor's reaction to the latter juror was not to peremptorily excuse him, but to solicit assurances from him that he could serve despite his more numerous and pressing obligations. (*Ibid.*) The Supreme Court queried why the prosecutor was not as concerned that this juror would want to convict the defendant of a lesser-included offense to avoid the penalty phase as the prosecutor seemed to be regarding the potential juror at issue. (*Ibid.*)

The Supreme Court noted that its finding that the prosecutor's explanation was pretextual "naturally" gave rise to the inference of discriminatory intent. (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 185].) From there, the high court segued to the conclusion that the explanation was "shown to have been motivated in substantial part by discriminatory intent." (*Id.* at p. ___ [170 L.Ed.2d at p. 186].) It noted that the prosecutor's excusal of the potential juror could then not be sustained by anything less than his carrying his burden of showing that it was not discriminatory. (*Id.* at pp. ___–___ [170 L.Ed.2d at p. 186].)

### c. *Application of* Snyder *to This Case*

█ *Snyder*, unsurprisingly, reiterates the well-established law that the trial court plays a pivotal role in evaluating *Wheeler/Batson* claims, that its firsthand observations of the demeanor of the prosecutor and the challenged potential juror are of "even greater importance," and that the trial court's determination of credibility and demeanor lie " ' "peculiarly within [its] province," ' [citation]" and " 'in the absence of exceptional circumstances, we

should defer to [it].' [Citation.]" (*Snyder, supra*, 552 U.S. at p. ___ [170 L.Ed.2d at p. 181].) ■ Here, the trial court made the requisite finding of demeanor and credibility, *based on its own recollection of both.* Contrary to defendant's assertion, *Snyder* does not, in any way, suggest that, either during an original *Wheeler/Batson* hearing, or on remand such as here, due process requires: (1) representation of the defendant by the defense attorney who was present during voir dire, (2) examination and cross-examination of the prosecutor under oath, or (3) production of the prosecutor's voir dire notes.

## II.

### DISPOSITION

The trial court is directed to amend the abstract to include the fact that defendant was sentenced pursuant to Penal Code section 667, subdivisions (b) through (i). In all other respects, the judgment is affirmed.

Hollenhorst, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 2008, S164125.