Filed 11/1/23  P. v. Collins CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DONTRELL COLLINS,<br><br>Defendant and Appellant. | F084096<br><br>(Super. Ct. No. BF156917A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Carla J. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

"[E]valuating claims that a prosecutor used peremptory challenges in violation of the Equal Protection Clause" involves a "three-part process …."  (*Miller-El v. Cockrell* (2003) 537 U.S. 322, 328 (*Miller-El*).)  "First, a defendant must make a prima facie

showing that a peremptory challenge has been exercised on the basis of race. [Citation.] Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. [Citation.] Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination."[1] (*Id.* at pp. 328-329.)

This appeal involves steps two and three. In a prior appeal, we found error at the first step and directed the trial court to "attempt to conduct the second and third … steps." (*Collins, supra,* 60 Cal.App.5th at p. 556.) "If," we explained, "the [trial] court [found] that, due to the passage of time or any other reason, it [could not] adequately address the issues … or make a reliable determination, or if it determine[d] that the prosecutor exercised … peremptory challenges improperly, it should set the case for a new trial. If it [found] the prosecutor exercised … peremptory challenges in a permissible fashion, it should reinstate the judgment." (*Ibid.*)

After remand, the trial court concluded it could fairly conduct steps two and three. It then found Dontrell Collins failed to prove purposeful discrimination and reinstated the judgment as directed. Collins now challenges those conclusions. We affirm.

### BACKGROUND

*Underlying Facts*

"Collins drove his car at nearly 100 miles per hour and collided into a vehicle carrying three young women; two of them died. A test of his blood revealed the presence of alcohol and PCP. He was convicted of many crimes, including two counts of murder." (*Collins, supra,* 60 Cal.App.5th at p. 544.)

---

[1] Any peremptory challenge against a protected group violates the Equal Protection Clause. (*People v. Collins* (2021) 60 Cal.App.5th 540, 551, fn.7 (*Collins*).) Because this case involves a prosecutor allegedly striking a juror on the basis of race, the quoted language throughout this opinion tracks that common circumstance.

*Prior Appeal*

Previously, Collins "argue[d] the court erred in denying his *Batson/Wheeler*[2] motion to challenge the prosecutor's excusal of a prospective Black juror." (*Collins, supra,* 60 Cal.App.5th at p. 546.) We found merit in the argument.

This court stated the trial court's reasoning in denying the motion was "unsupported and contradicted by the record." (*Collins, supra,* 60 Cal.App.5th at pp. 552-553.) For example, we recognized a concern about the prospective juror's familiarity with " 'potential evidence in [the] case' applied equally to [another] juror the prosecutor accepted …." (*Id.* at p. 553.) We also noted the concerns underlying the prospective juror's "prior law enforcement contacts" were logically flawed. (*Ibid.*) Particularly important were facts that the prospective juror's law enforcement contacts were not meaningfully explored and "the prosecutor accepted *seven* other jurors with similar law enforcement contacts or experiences …." (*Ibid.*)

In finding the record supported " 'a prima facie case of discrimination,' " we recognized " '[t]he fact that the prosecutor volunteered one or more nondiscriminatory reasons for excusing the juror is of no relevance at the first' " step. (*Collins, supra,* 60 Cal.App.5th at p. 552.) Similarly, we acknowledged " '[a] reason that makes no sense is nonetheless' " a valid reason as long as it is genuine and nondiscriminatory." (*Id.* at p. 554, fn. 11.) Genuineness, however, "is not relevant to *defeating* a prima facie case …." (*Ibid.*)

*Remand*

On remand, the prosecutor filled approximately 300 pages[3] in the record explaining his thought process during jury selection. He also introduced into evidence

---

[2] *Batson v. Kentucky* (1986) 476 U.S. 79, 106; *People v. Wheeler* (1978) 22 Cal.3d 258.

[3] Our background summarizes the prosecutor's remarks for context. It is not a verbatim recitation of every individual point or word.

his contemporaneous notes on each juror.[4] At the outset, the prosecutor noted the juror-at-issue's "excusal … was intricately linked to the facts of [the] case" and mentioned "jury selection happens very fast" so his "notes" did not encapsulate "exactly what [he] was thinking ….."

The prosecutor emphasized that the biggest "issue in this case" was mental health—"was it PCP or was it … schizophrenia?" The prosecutor believed Collins's mental health defense—if presented—was based on "document[ation] by … mental health workers in [a] correctional facility." These workers, he explained, were "like" the prospective juror who worked as a "psych tech" at the California Department of Corrections and Rehabilitation.

The prosecutor was "very, very concerned about the fact that [he would] have to," to undermine a probable defense, "attack [the prospective juror's] profession … indirectly …." He found it challenging to discredit "mental health workers in correctional facilities" with the prospective juror sitting on the jury. He believed she was "more inclined to accept" a mental health defense because the evidence "line[d] up with the world she [knew]." The fact her "own cousin [was] incarcerated" for a crime "result[ing] from … a mental breakdown … reinforc[ed]" that concern.

The reason the prosecutor did not specifically question the prospective juror, he said, was because he neither wanted to lend credence to the mental health defense nor did he wish to ask an objectionable question relating to "her perspectives …." He also stated,

---

[4] For the prospective juror at issue, the prosecutor's notes verbatim read: "Psyc Tech At CDC. Single 7yrold daughter. Cartoon te-shirt. Responds with noods. Deales with mental health inmates[.]" (Multiple errors in original.)

"[T]hat field had sort of been plowed,"[5] meaning he felt he "had enough information … to make an informed decision and … additional follow-up" would not help.[6]

Another issue for the prosecutor was the prospective juror's ambiguity about her ability to follow the court's instructions. For example, while she answered she could rely solely on the evidence in the case, she also said "if it wasn't correct, [she] would show proof of what they said wasn't correct, like if [she] could pull it up on the Internet or something [and] say look, this was wrong …." Also troubling was the fact "the rest of the jurors" knew about her profession because they might seek her opinion notwithstanding the court's instructions.

Last, the prosecutor explored the differences he discerned between the prospective juror at issue and other jurors. One juror with experience in mental health was not objectionable because he did not work in a "correctional" setting, like the prospective juror. Another's relative's crime was neither violent nor "stemm[ed] from mental illness," unlike the prospective juror's cousin.

Finally, another juror comparable to the prospective juror was strategically deemed acceptable because "it was extremely unlikely that the defense was going to keep [that] juror." The prosecutor noted numerous other "offsetting characteristics" between various jurors throughout the hearing.[7]

A juror with a prior "first-degree burglary" conviction deemed acceptable, for example, "[took] the cake" "if … measur[ed] … against" the prospective juror's "petty theft prior …." Admittedly, the prosecutor "ha[d] a hard time explaining why" petty theft in particular "resona[ted]" as a concern.

---

[5] The "field" presumably refers to the prospective juror's answer she could set her profession and experience aside by relying solely on the evidence presented in court.

[6] The prosecutor explained he had "the luxury … of being able to [ask questions] after the Court's questions and the defense questions …."

[7] Being "married," for example, was a common "offsetter."

In sum, the prosecutor stated he "evaluat[ed a potential juror's] risk" " in totality." Relative to the prospective juror, neither the "prior petty theft" nor "the cousin who was incarcerated" was "determinative." Her "position as a psych tech, combined with other things … related to [her] profession," however, were a dealbreaker.

*Arguments*

Collins's attorney first argued he was at "a disadvantage" because he "wasn't present at the trial."[8] He lamented the prosecutor's ability "to comment … on … demeanor," because he himself did not "have the ability to do that." Multiple times, he highlighted inconsistencies and pointed out flaws in the prosecutor's logic.

For example, Collins's attorney noted the prosecutor believed a juror whose parents "were [both] arrested" was more favorable than the prospective juror whose "cousins were arrested …." He also argued a "first-degree burglary" conviction was a "much greater concern" than "petty theft …."

Ultimately, Collins's attorney reemphasized his "disadvantage" from not being "in the courtroom" during the trial.[9] He concluded by claiming "the Court [was] in the position of assessing the credibility of reasons that originated with the Court."

The prosecutor directly rebutted some of Collins's counsel's criticisms. He added that the original trial counsel "could have [been] called … as a witness" if necessary.

*Ruling*

The court began by finding there was "a sufficient record … to adequately" rule on the issues, partly because the prospective juror's "demeanor while in court [was] not … an issue." In other words, the written record was sufficient, and courtroom

---

[8] Collins was represented on remand by counsel different than at trial.

[9] This comment specifically related to the prosecutor's written note the prospective juror was wearing a cartoon-type "T-shirt." The prosecutor, for his part, disavowed relying on the T-shirt to justify the strike because he had no "independent recollection of that fact …." The court likewise "set[] aside the T-shirt observation …."

observations of the prospective juror were immaterial. It acknowledged it "must determine the genuineness of the [prosecutor's] proffered explanations" and explained it had "observed the demeanor and sincerity of the prosecutor" "throughout [the] hearing …."

In answering that inquiry, the court credited the prosecutor's concern about "the … anticipated defense involving mental illness." The credited concern was buttressed by the fact the prosecutor filed "in limine motions," prior to jury selection, seeking to limit "mental illness" evidence. The court also accepted the prosecutor's "explanation … as to why he did not ask certain questions" of the prospective juror.

Finally, the court agreed with the prosecutor "the differences" between the prospective juror at issue and the other juror with a "similar profession[]" "were significant," i.e., working in "a custodial setting" versus "a non-custodial setting." The court subsequently concluded the prosecutor "appear[ed] credible" in explaining "his reasons for accepting and excusing jurors in this case." It then reinstated the judgment as directed.[10]

## DISCUSSION

Did the trial court err in finding it could proceed with concluding the *Batson/Wheeler* motion? Did the trial court err in holding there was no discrimination? The answer to both is "no."

### I. Motion Properly Concluded

Collins argues the trial court erred in denying, after remand, a motion for new trial. The People contend "[t]he trial court did not abuse its broad discretion" in denying the motion. We agree with the People.

---

[10] Consistent with our directive to strike certain enhancements, Collins was sentenced to serve 70 years, four months to life in state prison.

7.

## A. Additional Background

After remand, and prior to the hearing summarized above, Collins's attorney filed a nonstatutory motion for new trial. The motion asserted a new trial was warranted "due to the passage of time," because "an accurate credibility assessment [could not] be conducted," and because "the prosecutor [was] not credible …."

The trial court denied the motion, reasoning it was not "impossible for [it] to judge the sincerity of any explanation the prosecutor" might provide and a sufficient record existed to allow counsel on remand "to participate in" the *Batson/Wheeler* motion. It later repeated a similar ruling during the full hearing, as described above, because counsel renewed the argument.

## B. Analysis

The decision to grant or deny a new trial due to an inability to conclude a *Batson/Wheeler* motion after remand presents a mixed question of law and fact. A reviewing court independently answers the question. (See *People v. Tran* (2022) 13 Cal.5th 1169, 1231; *People v. Ault* (2004) 33 Cal.4th 1250, 1261-1262 ["protect[ing a] party's right to a fully impartial jury" requires "independent review of the trial court's reasons for *denying* a new trial motion"].)

Here, we do not find a new trial was justified due to the passage of time or an inability to assess the prosecutor's credibility. The only piece missing from jury selection was Collins's trial counsel. The judge was present, the prosecutor was present, Collins was present, a complete transcript existed, and the prosecutor's notes were available. Apparently, Collins's original trial counsel was also available if needed for investigation or testimony.[11]

---

[11] When, after remand, the prosecutor suggested Collins's trial counsel was available "as a witness," there was no objection or refutation.

It is true that Collins's counsel after remand was new to the case. That does not mean, however, it was impossible to investigate the matter through Collins himself, the original trial attorney, any other person present during jury selection, and the record itself. (Cf. *People v. Johnson* (2006) 38 Cal.4th 1096, 1102 [unavailability of original trial judge "does not make a limited remand impossible."].)

Collins's last point—that the prosecutor was not credible—is simply irrelevant to whether the record is sufficient to proceed with concluding a *Batson/Wheeler* motion after remand.[12] Credibility is the ultimate issue at step three, which we turn to next.[13]

## II. No Error in Finding Prosecutor Credible

"At the third step of the *Batson/Wheeler* analysis, the trial court evaluates the credibility of the prosecutor's … explanation. Credibility may be gauged by examining factors including but not limited to ' "the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." ' "[14] (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1168 (*Gutierrez*).)

" ' "[T]he decisive question" ' " is whether the prosecutor " ' "should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the [prosecutor.]" ' [Citation.] 'A trial court is best situated to

---

**12** Collins also asserts "[t]he [trial] court [originally] provided the prosecutor with a roadmap of reasons it thought acceptable, so the court [was] now in a position to evaluate itself, which is an impossible task." We disagree. Even if we assume the prosecutor simply parroted the trial court, that does not mean the prosecutor's credibility was neither not at issue nor impossible to discern, as discussed *post*.

**13** It does not appear Collins challenges the step two inquiry, i.e., that the prosecutor provided a race-neutral rationale. Were we to address the issue, we would readily find the prosecutor's rationale was race-neutral.

**14** "The Constitution forbids discriminatory strikes against jurors in all cases, civil and criminal, and applies equally to defendants, plaintiffs, and prosecutors alike." (*Collins, supra,* 60 Cal.App.5th at p. 551, fn.7.) We use language referring to prosecutors simply because that is the situation in this case.

evaluate … the credibility of the prosecutor ….' " (*People v. Baker* (2021) 10 Cal.5th 1044, 1077 (*Baker*).) " '[W]hen the trial court makes a sincere and reasoned effort to evaluate [credibility], the reviewing court defers to its conclusions on appeal, and examines only whether substantial evidence supports them.' " (*Ibid.; Miller-El, supra,* 537 U.S. at p. 340 [" '[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal' and will not be overturned unless clearly erroneous."].)

The trial court in this case did not err in finding the prosecutor credible. The prosecutor's explanations, at the time the original objection was made, and after remand, remain consistent. Importantly, they are consistent with the prosecutor's contemporaneous notes about the prospective juror, suggesting strongly they were not the product of afterthought.

The prosecutor's concerns about mental health evidence and the prospective juror's reluctance or willingness to follow the court's instructions are legitimate. Although in the prior appeal we found logic lacking on these points, especially when compared to other jurors, we did not assess the prosecutor's genuineness or sincerity.

Indeed, we explicitly acknowledged "the validity of the prosecutor's justification is not relevant to *defeating* a prima facie case" at step one. (*Collins, supra,* 60 Cal.App.5th at p. 554, fn. 11.) We also noted " ' "[a] reason that makes no sense is nonetheless" ' a valid reason as long as it is genuine and nondiscriminatory." (*Ibid.*) That applies well to the prosecutor's most questionable rationale: the prospective juror's prior petty theft.[15]

The prosecutor himself acknowledged explaining why petty theft was more concerning than first degree burglary was difficult to articulate. We find it hard to

---

[15] Again, it is unclear if the petty theft was indeed a prior. How the case resolved, or if there even was a case, is not disclosed in the record.

10.

understand.  Were this the only rationale, it might not withstand scrutiny.  The prosecutor, however, disavowed ascribing determinative weight to any singular concern, focusing instead on a juror's potential "in totality."

The judge credited the prosecutor's total explanation, particularly the prospective juror's experience with mental health in a custodial setting.  Having reviewed the entire record, we find substantial evidence supports that conclusion.[16]  (*Baker, supra,* 10 Cal.5th at p. 1077.)

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


MEEHAN, J.

---

[16] We previously engaged in comparative juror analysis in the prior appeal.  (E.g., *Collins, supra,* 60 Cal.App.5th at pp. 548-555.)  That analysis, in our view, does not and cannot conclusively answer whether the prosecutor *in this case* was credible.  (Cf.. *Gutierrez, supra,* 2 Cal.5th at p. 1174 ["Court of Appeal erred in refusing to undertake comparative juror analysis."].)

Beyond substantial evidence, we find no occasion to conclude the prosecutor was less than truthful.  Although the prosecutor's repeated references to "prior petty theft" lack a certain logic, in our view that is not fatal to his credibility on this record.  (See *Collins, supra,* at 60 Cal.App.5th at p. 553 [prospective juror " 'charged with a petty theft when [she] was younger,' [but] … never asked how the charges were resolved" nor did record "otherwise disclose the answer[]"]; *People v. Stanley* (2006) 39 Cal.4th 913, 936 [" '[a] reason that makes no sense is nonetheless' " a valid reason as long as it is genuine and nondiscriminatory.].)