Filed 10/24/14  P. v. Ward CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B244947 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA392093) |
| v. | |
| JAMES VERNON WARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig J. Mitchell, Judge.  Conditionally reversed with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant James Vernon Ward appeals from the judgment entered following a jury trial in which he was convicted of five counts of second degree robbery, four counts of attempted second degree robbery, two counts of grand theft auto, and single counts of possession of a firearm by a convicted felon and assault with a firearm.

Defendant objected, pursuant to *People v. Wheeler* (1978) 22 Cal.3d 258, 276–277 (*Wheeler*) and *Batson v. Kentucky* (1986) 476 U.S. 79, 85, 96–99 [106 S.Ct. 1712] (*Batson*), to the prosecutor's use of peremptory challenges against two African-American jurors. The trial court found defendant had shown a prima facie case of group bias, but overruled the objection after the prosecutor stated her reasons with respect to only one of the two jurors. Defendant contends the trial court thereby violated his rights to equal protection and trial by a representative cross-section of the community. We agree and reverse the judgment.

## BACKGROUND

Because defendant's sole appellate contention pertains to jury selection and he does not challenge the sufficiency of the evidence to support the judgment, we set forth a cursory summary of the offenses.

### 1. The offenses

A hooded, masked man wearing latex gloves entered a Bank of America branch in Playa Vista on June 11, 2010, pointed a gun at the three employees and stole $18,900. The robber got into a white 1985–1987 Nissan Sentra that matched a car owned by defendant.

On August 18, 2010, two hooded, masked men wearing latex gloves attempted a robbery at the same bank branch after beating a security guard outside and stealing the guard's gun. All of the employees hid, and the would-be robbers left in a stolen black Jeep Cherokee driven by a third man, who also wore latex gloves. The Jeep was recovered several blocks from the bank. Three latex gloves found in the Jeep and two found just outside the bank contained DNA matching defendant.

2

On January 21, 2011, police observed codefendant Jonathan Jones and another man sitting in a stolen red Jeep Cherokee. Defendant's white Sentra was parked in front of the Jeep and depicted on a video recorded from the police car, but left before the officers discovered the red Jeep was listed as stolen. In the Jeep the police found latex gloves and the gun stolen from the bank security guard on August 18, 2010.

Defendant, who had prior felony convictions, was arrested on an unrelated matter on December 19, 2011, and a gun was found in his vehicle. In a statement to the police after his arrest, defendant admitted he had stolen the red and black Jeeps. In a surreptitiously recorded conversation with a paid informant posing as a jail inmate, defendant admitted participating in two robberies at the same establishment and referred to the presence of his DNA on gloves he thought he had discarded and his accomplices being arrested with a gun taken from a guard they had beaten.

## 2.     Verdicts and sentencing

The jury convicted defendant of the offenses listed above. The jury found every offense was committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. It further found a principal was armed with a firearm in the commission of every robbery and attempted robbery, and the assault with a firearm. The trial court found true allegations defendant had suffered two prior serious felony convictions within the scope of the "Three Strikes" law and Penal Code section 667, subdivision (a)(1).

The court sentenced defendant to consecutive third strike terms of 25 years to life in prison for every count, plus gang and firearm enhancements, for an aggregate sentence of 325 years to life, plus 129 years, in prison.

## DISCUSSION

## 1.     Proceedings in the trial court

The prosecutor exercised her eighth peremptory challenge against Prospective Juror No. 4, a male social worker who worked for CalWORKS, had no prior jury

3

experience, and was married to a nurse. The prosecutor accepted the panel after each of defense counsel's next two peremptory challenges. After defense counsel exercised another peremptory challenge, the prosecutor excused Prospective Juror No. 10.

Defense counsel then made "a *Batson*/*Wheeler* motion" with respect to Prospective Jurors No. 4 and No. 10, stating these prospective jurors "are both African-American. And as far as I can tell, they said nothing that—nothing that would raise alarm bells for the prosecution. And as far as the we—" The court interrupted, saying, "The court does find that a prima facie showing has been made." The court asked the prosecutor for her "justification."

The prosecutor noted she had accepted Prospective Juror No. 10 twice, but "based upon the substance of the jury after I accepted him two times, I felt it was in my interest to ask that he be excused." She also explained as to Prospective Juror No. 10 that she exercised a peremptory challenge against him because he said he once had been stopped by police on suspicion of kidnapping, and "when [defendant] is pulled over and eventually arrested, it's for kidnapping." The court responded, "I do find that that is a category neutral explanation, and consequently *Wheeler Watson—Batson*/*Wheeler* []motion is denied." Jury selection then resumed, without further mention of Prospective Juror No. 4.

Defendant contends the court's denial of his motion without requiring the prosecutor to explain why she exercised a peremptory challenge against Prospective Juror No. 4 violated defendant's rights to equal protection and trial by a representative cross-section of the community. We agree.

## 2.      *Batson* and *Wheeler* motions

A party violates both the California and United States Constitutions by using peremptory challenges to remove prospective jurors solely on the basis of group bias, that is, bias presumed from membership in an identifiable racial, religious, ethnic, or similar group. (*Wheeler*, *supra*, 22 Cal.3d at pp. 276–277; *People v. Lancaster* (2007) 41 Cal.4th 50, 74; *Batson*, *supra*, 476 U.S. at pp. 85, 96–99.) A party who believes his opponent is

doing so must timely object and make a prima facie showing of exclusion on the basis of group bias.  (*Wheeler*, at p. 280.)  A prima facie showing requires that the party make as complete a record as possible, show that the persons excluded belonged to a cognizable group, and produce evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.  (*Ibid.*; *Lancaster*, at p. 74; *Johnson v. California* (2005) 545 U.S. 162, 170 [125 S.Ct. 2410].)

If a prima facie case is established, the burden shifts to the other party to show the peremptory challenge was not based solely upon group bias, but upon a "specific bias," that is, one related to the case, parties, or witnesses.  (*Wheeler*, *supra*, 22 Cal.3d at pp. 276, 281–282; *Lancaster*, *supra*, 41 Cal.4th at p. 74.)  The court should not speculate as to the prosecutor's reasons, but must inquire.  (*Lancaster*, at p. 76.)  "A [party] asked to explain his conduct must provide a '"clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.' [Citation.]  'The justification need not support a challenge for *cause*, and even a "trivial" reason, if genuine and neutral, will suffice.' [Citation.]  A prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons.  [Citations.]  Nevertheless, although a [party] may rely on any number of bases to select jurors, a legitimate reason is one that does not deny equal protection." (*People v. Lenix* (2008) 44 Cal.4th 602, 613 (*Lenix*).)

The trial court then must make a sincere and reasoned attempt to evaluate the explanation for each challenged juror in light of the circumstances of the case, trial techniques, examination of prospective jurors, and exercise of peremptory challenges. (*People v. Fuentes* (1991) 54 Cal.3d 707, 718.)  It must determine whether a valid reason existed and actually prompted the exercise of each questioned peremptory challenge.  (*Id.* at p. 720.)  The proper focus is the subjective genuineness of the nondiscriminatory reasons stated by the prosecutor, not their objective reasonableness.  (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.)  "[T]he issue comes down to whether the trial court finds the

prosecutor's race-neutral explanations to be credible." (*Miller-El v. Cockrell* (2003) 537 U.S. 322, 339 [123 S.Ct. 1029].)

Because *Batson*/*Wheeler* motions call upon trial judges' personal observations, we "review the decision of the trial court under the substantial evidence standard, according deference to the trial court's ruling when the court has made a sincere and reasoned effort to evaluate each of the stated reasons for a challenge to a particular juror." (*People v. Hamilton* (2009) 45 Cal.4th 863, 900–901, fn. omitted.)

**3.     The trial court erred by failing to complete the second and third steps of the *Batson*/*Wheeler* process after finding a prima facie case**

As a preliminary matter, we reject the Attorney General's arguments that defendant made an insufficient prima facie showing and that the trial court found a prima facie showing only as to Prospective Juror No. 10. Defendant's motion specifically addressed both Prospective Jurors No. 4 and No. 10, and the trial court expressly found a prima facie showing had been made, without limiting its finding to just one of the two prospective jurors. Moreover, defense counsel was in the midst of making her prima facie showing when the trial court interrupted her.

Because the trial court found a prima facie showing, the prosecutor was *required* to explain her "legitimate reasons" for exercising peremptory challenges against both Prospective Jurors No. 4 and No. 10, and the trial court was *required* to make a sincere and reasoned attempt to evaluate the explanation for *each* challenged juror. Here, the prosecutor and the trial court performed these duties only with respect to Prospective Juror No. 10. The trial court was not permitted to speculate regarding the prosecutor's reasons for exercising a peremptory challenge against Prospective Juror No. 4 or to rule only on half the motion. Accordingly, reversal is required.

We also reject the Attorney General's reliance upon how the court handled a subsequent *Batson*/*Wheeler* motion by the prosecutor. That motion is not in issue on appeal, and a trial court's ruling on a *Batson*/*Wheeler* motion "is reviewed on the record as it stands at the time the" ruling was made. (*Lenix*, *supra*, 44 Cal.4th at p. 624.)

6

**4.      A limited remand is appropriate**

In *People v. Johnson* (2006) 38 Cal.4th 1096, the California Supreme Court "adopt[ed] the federal approach" of a limited remand as the remedy for the trial court's error in failing to find a prima facie showing at the first step of the *Batson*/*Wheeler* analysis.  (*Johnson*, at p. 1100.)  The court acknowledged the possibility that the passage of time and faded memories might make it too difficult to perform the second and third steps of the process, but concluded an attempt should be made.  (*Id.* at pp. 1101–1102.)  The court explained, "If the prosecutor cannot carry this burden [to justify the peremptory challenges] to the trial court's satisfaction, then a retrial will be necessary. . . .  But this circumstance does not prevent us from remanding the matter for a hearing . . . ."  (*Id.* at p. 1103.)

Defendant argues a limited remand is inappropriate in this case because the error was not at the first stage of the *Batson*/*Wheeler* analysis.  However, the Supreme Court's rationale for adopting the limited remand procedure is in no way limited to error at the first stage, and, in the wake of *Johnson*, the limited remand remedy has been applied to error at the third stage.  (*People v. Hutchins* (2007) 147 Cal.App.4th 992, 999.)  Moreover, just as in *Johnson*, the second and third stages of the *Batson*/*Wheeler* process remain to be performed with respect to Prospective Juror No. 4.

Accordingly, we employ the limited remand remedy adopted in *Johnson* and direct the trial court to attempt to complete the *Batson*/*Wheeler* analysis with respect to Prospective Juror No. 4.

## DISPOSITION

The judgment is conditionally reversed and the cause is remanded to the trial court, which must attempt to perform the second and third stages of the *Batson*/*Wheeler* analysis. The court should require the prosecutor to explain her peremptory challenge of Prospective Juror No. 4. If the prosecutor offers a race-neutral explanation, the court must attempt to make a sincere and reasoned evaluation of that explanation. If the court finds that, due to the passage of time or any other reason, it cannot adequately address the issues at this stage or make a reliable determination, or if it determines the prosecutor improperly challenged Prospective Juror No. 4, it should set the case for a new trial. If it finds the prosecutor exercised her peremptory challenges in a permissible fashion, it should reinstate the judgment.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


8